1807.

EATON
v.
SANFORD.

lapse of time do not operate, against any persons, except *legal* persons,—persons *sui juris*.

It is asked, whether, as more than sixty years have elapsed, the doctrine relative to, and limiting a writ of right may not be applicable ? By our statute, the writ of right, and all writs of entry, are limited to fifteen years, except, &c. and under the exception there is no other limitation of time than five years from the time of the removing of the disability. We have a statute covering the whole subject.

But again, the doctrine referred to, as to a writ of right, does not extend to infants, married women, &c. or persons not *sui juris*.

BY THE COURT, unanimously,

The judgment was affirmed.

## De Forest *v.* Brainerd.

### In the Court below,

JEHU BRAINERD, *Plaintiff ;* LOCKWOOD DE FOREST, *Defendant.*

An allegation, that the plaintiff, who was sheriff, *appointed* the defendant one of his deputies, at a time specified, is supported by proof, that the plaintiff having previously appointed him, *continued* him in office at and after that time.

A contract between a sheriff and his deputy, that the latter shall pay the former a certain sum *per annum* in consideration of his appointment, is not illegal.

THIS was an action of *assumpsit.*

The declaration stated, that the plaintiff being sheriff of the county of New Haven, the defendant, on or about the first day of January, 1804, applied to him to be appointed one of his deputies ; that the plaintiff accordingly appointed him, which appointment was approbated, by the County

Court ; (a) and that the defendant, in consideration thereof, " faithfully promised the plaintiff to pay him at and after " the rate of three hundred dollars *per annum* for said ap- " pointment, and that he would secure the same by notes at " the end of each quarter, which notes should be made pay- " able at the end of the year." The action was brought in March, 1805.

The defendant pleaded the general issue ; and the jury found a verdict for the plaintiff.

On the trial it appeared, that the defendant was appointed by written deputation in June, 1801 ; and the plaintiff then proved, in support of his declaration, that " he *continued* " the defendant in said office of deputy-sheriff, in considera- " tion of which, the defendant promised to pay the plaintiff at " and after the rate of three hundred dollars a year." The counsel for the defendant contended before the Court and jury, that this proof did not support the declaration ; and that the issue, therefore, ought to be found in favour of the defendant. The Court, however, charged the jury, that this proof did support the declaration. The counsel for the defendant also contended, that the promise alleged in the declaration did not lay any foundation for a recovery against the defendant, for that it was illegal, and against sound po- licy. The Court expressed a contrary opinion to the jury, and directed them to find for the plaintiff. A bill of excep- tions was filed to both parts of the charge.

*Daggett*, and *Mills*, for the plaintiff in error, contended,

1. That the proof did not support the declaration. Here they argued, that in all special *assumpsits*, the promise and consideration must be proved precisely as alleged. In

(a) The approbation of the County Court is, by statute, rendered necessary. *Stat.* 501, *edit.* 1796.

U u u

1807.

———

DE FOREST
v.
BRAINERD.

support of this position, *King* v. *Robinson*, (b) *Harkin* v. *Cooke*, (c) *Bul. Ni. Pri.* 145, 147, 139, were cited.

2. That a sheriff cannot, upon principles of law, let out his office, or take a reward for a deputation. The authorities relied upon, in support of this position, were, *Dalt. Off Sher.* 467. 1 *Hawk. P. C. ch.* 68. also *ch.* 67. *Stackpole* v. *Earle*, (d) *Parsons* v. *Thompson*, (e) and *Godolphin* v. *Tudor*. (f)

*Ingersoll*, and *Smith*, (of New Haven) for the defendant in error, contended

1. That the declaration was substantially proved. The continuation of the deputy in office from year to year, was the same in effect, as an appointment at the commencement of each year.

2. That the contract stated in the declaration was not a *sale of office*. The sheriff certainly did not part with his own office. He remained in as full possession of it after the appointment of *De Forest* as before ; nor was he at all restricted in the exercise of it. Nor was it an act of *bribery* in the sheriff to stipulate with his deputy, as one of the terms of his appointment, for such a sum as would remunerate the former for the responsibility which he thereby took upon himself, with regard to the official conduct of the latter. The sheriff in England has the power of making his own terms with his deputies. Such a power has always been exercised by the several sheriffs in this state, with the know-

(b) *Cro. Eliz.* 79.
(c) 4 *Term. Rep.* 314.
(d) 2 *Wils.* 133.
(e) 1 *H. Bla.* 322.
(f) 6 *Mod.* 294.

ledge, and the implied approbation, of that branch of the government, by whom they are appointed. (g)

BY THE COURT, HILLHOUSE, MILLER, and AUSTIN, *Assts.* dissenting,

### The judgment was affirmed.

(g) The sheriffs, in Connecticut, are appointed by the Governor and Council,—the same persons of whom this Court is composed. *R.*

## Bulkley *v.* Storer.

### In the Court below,

NATHANIEL STORER, *Plaintiff;* JOHN BULKLEY, and LOCK-
WOOD DE FOREST, *Defendants.*

THIS was an action on the case.

The declaration stated, that in November, 1804, the plaintiff was extensively engaged in trade, and in the business of ship-building, by which he acquired great profit. Being in want of $ 4000, he applied to his friend, and brother-in-law, *James Bontecou,* and obtained of him the loan of that of money, and as security, conveyed to him, by an absolute deed, a valuable real estate, which, according to the understanding of both, was to be re-conveyed on payment of the money borrowed. C. and D. at this time, formed a conspiracy against A. to ruin him in his business ; and, in pursuance of such conspiracy, applied to him, and proposed to loan him a further sum, of which he was in want, and pay the debt to B. and to hold the property conveyed to B. as security for both sums. They then went to B. and falsely and fraudulently told him, that they had made the proposed advances to A. in consequence of which B. conveyed said real estate to them. They then represented to the creditors of A. that he was a bankrupt, and advised them to attach his property, in consequence of which, his ruin was accomplished.—Held, that A. was entitled to recover against C. and D. in an action on the case.

The *gist* of such action being *tort,* the declaration will not be held ill, especially after verdict, because the tort is stated to have been effected by means of a *contract.*

In such action, the agreement between A. and B. though by parol, may be proved, notwithstanding the statute of frauds and perjuries.

In such action, it is no objection to the competency of a witness for the plaintiff, that he claims the real estate alleged to have been fraudulently obtained by the defendants

*A. being a man of responsibility, and engaged in extensive business, borrowed of B. his brother-in-law, a sum*