### HORACE FERRIS *v.* VICTOR ADAMS.

*Promissory note.   Consideration.   Sale of office.*

A promissory note, given for a gross sum, agreed to be paid by a deputy sheriff to the sheriff, as the price of his appointment to his office as deputy, is illegal, and no action can be sustained upon it.

ASSUMPSIT upon a promissory note for thirty dollars, dated December 1, 1846, executed by the defendant, and made payable to the plaintiff in one year. Plea, the general issue, and trial by the court, September Term, 1849,—BENNETT, J., presiding.

On trial, it appeared, that the note was given in consideration that the plaintiff, who was then sheriff of the county of Chittenden, had

Ferris *v.* Adams.

appointed the defendant, at his request, deputy sheriff of said county for the year next ensuing the date of the note. The defendant claimed, that a note given for such consideration was void in law; but the court held the consideration good, and rendered judgment for the plaintiff for the amount of the note and interest. Exceptions by defendant.

*S. Wires* and *W. W. Peck* for defendant.

The note is void; it having been given for the sale of a public office, which concerns the execution of justice. 1 Hawk. P. C., ch. 67. Bac. Abr., Tit. Offices and Officers. *Godolphin* v. *Tudor*, 2 Salk. 468. *Rex* v. *Vaughan*, 4 Burr. 2494. *Rex* v. *Plympton*, 2 Ld. Raym. 1377. *Rex* v. *Poleman*, 2 Camp. 230. *Law* v. *Law*, 3 P. Wms. 391. *Stackpole* v. *Earle*, 2 Wils. 133. *Harrington* v. *Du Chastel*, 1 Bro. C. C. 124. *Garforth* v. *Fearon*, 1 H. Bl. 327. *Parsons* v. *Thompson*, Ib. 322. *Barwick* v. *Reade*, Ib. 625. *Thompson* v. *Thompson*, 7 Ves. 470. *Richardson* v. *Mellish*, 2 Bing. 229. *Meredith* v. *Ladd*, 2 N. H. 57. *Carleton* v. *Whitcher*, 5 N. H. 196. *Cardigan* v. *Page*, 6 N. H. 182. *Groton* v. *Waldoborough*, 2 Fairf. 306. *Lewis* v. *Knox*, 2 Bibb 453. *Love* v. *Buckner*, 4 Bibb 506. 3 A. K. Marsh. 132. *Baldwin* v. *Bridges*, 2 J. J. Marsh. 110. *Board of Com'rs* v. *Millikin*, 7 Blackf. 307.

*A. Peck* and *L. Underwood* for plaintiff.

The deputy is the mere servant of the sheriff, who alone is responsible for all the official acts of the deputy. The sheriff may hire the deputy by the month, or year, or pay him a portion of the fees; and so he may reserve a portion of the fees to himself. The liability, which the sheriff incurs for the deputy, is a good consideration for the promise. The note is not void as against public policy. The sheriff may take a bond of indemnity, founded on the appointment of the deputy, or make any other contract to secure himself against liability, and these contracts will be enforced by the court. It is not the sale of an office; the sheriff retains all his powers, as such, and may revoke the deputation at will. Such contracts have been sustained in *De Forest* v. *Brainard*, 2 Day 528; *Matoon* v. *Kidd*, 7

xxiii.      18

Mass. 33, and *Farrar* v. *Barton*, 5 Mass. 395. The legislature have given countenance to contracts of a similar nature, by authorizing towns to make agreements with constables in relation to their appointment; and under that statute towns are in the habit of receiving the consideration. Sl. St. 411, § 6. Rev. St. 93, § 63. 1 Tol. St. 410. It is a common custom, known to every one, for sheriffs to receive a consideration from deputies for the liability they incur by the appointment. The court will not declare, that a contract, free from fraud, is void as against public policy, unless there is *strong* reason to interfere and do that, which is a proper subject for the legislature. *Richardson* v. *Mellish*, 9 E. C. L. 391. The only ground, that can be suggested, is, that it leads to extortion. No such reason can be valid,—as the statute regulates the fee bill, and makes the taking of more than legal fees penal.

The opinion of the court was delivered by

REDFIELD, J. This is an action upon a promissory note for $30, executed by the defendant to the plaintiff, while sheriff of the county of Chittenden, upon the occasion of appointing the defendant his deputy, for the ensuing year.

The leading inquiry in the case is, whether such a consideration is one upon which the law will uphold an assumpsit. It could scarcely be doubted at this day, we think, that the appointment of sheriff's deputy is a public office, and one which very considerably concerns the administration of justice. And it seems to be conceded in all the cases, that the sale of offices of that character, or of one's influence in obtaining appointments to them, is a transaction of so vicious a character, that it is no sufficient consideration for a promise. This is distinctly admitted, in terms, in *Richardson* v. *Mellish*, 2 Bing. 229; [9 E. C. L. 391,] which is the case most relied upon in argument for the defendant, and which, undoubtedly, is the strongest case in the English books, against holding contracts void, upon any supposed grounds of public policy. The court, in this case, which concerned the appointment of certain persons to the command of merchant ships in the East India Company's service, hold, that such an appointment is not a public office. But BEST, Ch. J., says, "I have never doubted, that it is an offence at common law, to sell

offices." "If a man sell an office, he cannot maintain an action growing out of such a contract." This is the general current of all the English cases, and of all the English books upon this subject. 7 Bac. Ab., Tit. Offices and Officers, F. 13.

It is said to be legal for the principal, in appointing a deputy, to reserve a portion of the fees, for services performed by the deputy, to himself, on the ground that all the fees belong to the principal. But, so far as we can learn, it is every where, at common law, held to be illegal for the principal to stipulate with his deputy for a gross sum, to be paid by the deputy as the price of his apppointment. The case of *Godolphin* v. *Tudor*, 2 Salk. 468, maintains this distinction.

The case *Rex* v. *Vaughan*, 4 Burr. 2494, is the case of an information against one, for attempting to bribe a privy counsellor to procure a patent for a public office in the gift of the King. And this was held to be an indictable offence, at common law. Lord MANSFIELD, in giving judgment against the respondent, in reply to the argument attempted to be drawn from the frequency of similar transactions, says, "If these transactions are believed to be frequent, it is time to put a stop to them." The case of *King* v. *Plympton*, 2 Ld. Raym. 1377, is a public prosecution against one, for attempting to bribe a corporator to vote for a particular candidate, for a corporate office, and is not important to the present question. *Law* v. *Law*, 3 P. Wms. 391, is the case of brokerage of office, as it is termed, where the procurer took a bond of the incumbent for an annual stipend of £10. The court of chancery relieved against the bond. The Lord Chancellor held, that giving money to one to influence the commissioners, in whose gift the appointment is, was altogether as bad as giving money to the commissioners themselves, to secure the appointment. *Stackpole* v. *Earl*, 2 Wils. 133, is assumpsit upon a promise to pay the plaintiff £2 to find a purchaser for the defendant's office of the port of London. It was held an illegal contract, at common law. Justice CLIVE said, "he thought the sale of offices *malum in se*, at common law." *Garforth* v. *Fearon*, 1 H. Bl. 327, is where one man allowed his name to be used, to obtain an office in the customs, which it was agreed should be executed by the plaintiff, and he receive the profits; but after the appointment

the defendant declined to do so. The court held, that no action will lie upon such a contract, it being void, both at common law, and under the statute. *Harrington* v. *Du Chatel,* 1 Br. C. C. 124, is where one held the nomination of certain officers in the King's household, and nominated the defendant for one, taking from him a bond for 100*l.* therefor. Lord THURLOW granted a perpetual injunction against the bond, although he did not regard the case, as coming within the statute of Edw. VI., but treated it as a matter of public policy of the law.

Many other English cases might be cited, to show that, at common law, the sale of an office, or of any agency or influence in the procuring of one, is illegal, and that any contract, made upon any such consideration, is void. And it seems to us, that the appointment of a deputy, reserving a portion of the fees, although objectionable on many accounts, is less so than the sale of the office for a gross sum. This distinction is strictly maintained in the English statute, 3 Geo. I., in relation to the sale of the office of under sheriff.

Such a course affords, perhaps, less temptation to needless increase of the number of deputies, or to the appointment of unsuitable persons. It involves no stipulations either express or implied, on the part of the sheriff, inconsistent with the general obligations of his office; and it seems to us, that taking a gross sum does. It seems to imply that the office shall not be revoked during the term. And this power of revoking the office of a deputy sheriff, is given partly for the public security, as well as for that of the sheriff. And it is an absolute power, vested in the sheriff, to be exercised without control or responsibility. And we think the sheriff ought not to be allowed to abridge or embarrass this power, or its exercise, by any collateral contracts growing out of the terms of the appointment. Whoever is appointed should be appointed freely, and the sheriff should remain at liberty freely to remove them. But if all sheriffs' deputies were appointed in the mode which the present contract contemplates, they could never be removed, without immediately raising questions in regard to the sufficiency of the reasons for such removal, which is not what the statute contemplates. The deputy, who pays a portion of the fees, has not perhaps the same temptation towards extortion in office, as if he gave a gross sum.

The American cases, and the general opinion of the profession, certainly favor the view we have taken of this case.   The opinion of Woodbury, J., in *Meredith* v. *Ladd*, 2 N. H. 517, recognizes this distinction as valid and important.   The learned Judge says, " But should even a deputy sheriff agree to pay the high sheriff a gross sum, at all events, the contract would be void."   The same principle is virtually confirmed in *Carleton* v. *Whitcher*, 5 N. H. 196, and in *Cardigan* v. *Page*, 6 Ib. 182.   The same rule is recognized in *Groton* v. *Waldoborough*, 2 Fairf. 306.   The case of *Love* v. *Bucknor*, 4 Bibb 506, is the very case before this court; and the court held the bond, given-to indemnify the sheriff against the defaults of the deputy, void.   We should not perhaps be prepared to go that length.   The case of *Lewis* v. *Knox*, 2 Bibb 453, is much like the last case.   And the cases of *Overton* v. *Rhodes*, 3 A. K. Marsh. 205, and *Baldwin* v. *Bridges*, 2 J. J. Marsh. 7, are to the same effect.

The cases cited by the plaintiff's counsel, *Farrar* v. *Barton*, 5 Mass. 395, and *Matoon* v. *Kidd*, 7 Mass. 33, do not seem to afford them much support.   They were decided exclusively upon the statute of that state, by which the sheriff is prohibited from taking more than one fourth of the fees earned by the deputy.   In those cases it was held, that a contract stipulating for more was void.   And so, undoubtedly, in that state, would be a contract recovering a gross sum.

The case of *De Forrest* v. *Brainerd*, 2 Day 528, seems to stand altogether alone, and is the only case which would justify a judgment in this case for the plaintiff.   Aside from the current of authority against the case, there are other reasons, why it is entitled to very little consideration out of that state.   Indeed, the decisions of that court, when the court was divided, have been very little regarded, even by their own courts.

This being, in our judgment, the state of the law upon this subject, it is impossible to regard the contract as valid and legal.   We have been urged to uphold the present contract, upon the ground of the long continued practice- of this kind.   In answer to that, we can only say, that we know of no such practice, and if it do exist, it can make no difference.   A party, who takes a contract against the established policy, must be content to trust the honor of his debtor and his sense of justice, and has no right to expect the aid of the law in

his favor.   We might, perhaps, with some propriety, adopt the language of Lord MANSFIED in *Rex* v. *Vaughan, supra.*

Any argument attempted to be drawn from the statute, allowing towns to sell the office of constable, it seems to us, makes more in favor of the defendant than the plaintiff.

Judgment reversed and case remanded.