# Hatzfield *against* Gulden.

A contract founded upon a promise and engagement to procure signatures and obtain a pardon from the governor, for one convicted of a criminal offence and sentenced to punishment, is unlawful, and cannot be enforced by an action.

ERROR to the common pleas of *Berks* county.

This was an action of *assumpsit* by Daniel Gulden against Adolph Hatzfield, to recover from the defendant the sum of 1000 dollars as a compensation to the plaintiff for procuring a pardon for the defendant, who had been convicted of murder in the second degree and sentenced.

The court below was of opinion that the law did not forbid a recovery by the plaintiff, if the jury believed he was otherwise entitled to recover.

*Deckhart*, for plaintiff in error, cited, 3 *Esp.* 253.

*Jones* and *Smith*, contra, cited, *Hobart* 105; *Brownl.* 28; 9 *Com. Law Rep.* 397.

The opinion of the Court was delivered by

HUSTON, J.—D. G. Gulden was plaintiff below and brought case in *assumpsit* against Hatzfield. The declaration consisted of three counts. The first set out that Hatzfield had been indicted in the court of oyer and terminer of Berks county, and tried, and a verdict of guilty, and sentenced to confinement for twelve years. This was all set out at large, and sentence in full and the dates. And that in pursuance of the said sentence, the said Hatzfield was in confinement in the Eastern Penitentiary in the county of Philadelphia, and on the      day of        at said Penitentiary, in consideration that the plaintiff, at the special instance and request of said defendant, had then and there agreed with and undertaken, and faithfully promised the said defendant, to use all fair and honourable exertions to obtain from the governor of the commonwealth of Pennsylvania a pardon for the said defendant, being then and there imprisoned in

[Hatzfield v. Gulden.]

pursuance of such sentence, &c. &c. He the said defendant then and there agreed with, and faithfully promised to the said plaintiff to pay the said plaintiff the sum of 1000 dollars as a remuneration for his services and loss of time, in using his exertions to obtain from the said governor of Pennsylvania a pardon, &c.; and the plaintiff avers that afterwards, to wit, at, &c., the plaintiff did use all fair and honourable exertions to obtain, &c., and that by reason thereof the defendant became indebted to pay the said sum of 1000 dollars so by him promised, yet although often requested, &c.

The second count states that defendant was indebted to plaintiff in other 1000 dollars for services performed in obtaining from the governor of Pennsylvania a pardon for, &c., and being so indebted, promised, &c.

The third count charged that defendant was indebted to plaintiff in 1000 dollars, for money paid, laid out and expended, &c. not mentioning the crime or pardon.

Afterwards another count by leave of the court was filed, setting out at large the indictment, trial, conviction and judgment as in the first count, and imprisonment under the sentence; and that the said Adolph required the said Daniel to labour, and do his endeavour to obtain his, the said Adolph's pardon from, &c.; and that afterwards did, by all the means he could, and by riding and journeying in the county of Berks, and to and from Harrisburg, &c., use all his endeavours to obtain, &c.; by reason of his exertions, riding, journeying, and many days' labour, reasonably deserved to have other 1000 dollars, &c. &c. Plea *non assumpsit*, and issue. The proof in the cause was various and not a little of it. W. Lewars, J. S. Halloway, and Shoemaker, proved that Hatzfield said he would satisfy Gulden; one of them that he made this promise while still in the penitentiary, and two of them that he said so after he was pardoned.

J. Baily proved that he and a Mr Sontag were appointed a committee of Hatzfield's property. That Gulden applied to them, offered to go through the county to get signers. That they agreed to pay him 100 dollars in hand, and another 100 dollars if he got him liberated, in September 1834; paid the 100 dollars; also gave him 15 dollars in August 1834; and also 15 in March 1835; he was to obtain above twelve hundred signers to the petitions; but did not get so many. Hatzfield was liberated in April 1835. P. Geiger, a member of the legislature from Berks at that time, proved Gulden's exertions; witness went with him to the governor; that he wished witness to get signers; said they would pay so much a head; witness got signers, but said he did not want pay. Another witness proved that Gulden gave him 15 dollars to pay Snell, who would not give up his petitions and signers till paid. Peter Bright proved that he got in Reading between four and five hundred signers, at the request of Gulden and Snell: and he was to have three cents a head. The above is the substance, with the addition that many refused to sign,

&c. ; some proof of expenses paid by Gulden for horse hire to the amount of from 10 to 15 dollars.

The court told the jury : " There can be no recovery on an illegal contract, neither can there be a recovery on contracts which are prohibited by law; nor on contracts against which penalties are enjoined ; nor a party cannot successfully come into court and say, Give me a sum of money which I claim, against or in violation of law.    This would not be tolerated nor countenanced ; but I am not aware that it is unlawful to obtain a pardon by lawful means."    And again, " If the defendant did employ the plaintiff to travel and spend time in procuring signatures to petitions, and to go and carry these petitions to the governor, and promised to pay him for his time, labour and trouble in performing this service, I think he can recover a reasonable and just compensation therefor."

The three first errors were in entering judgment for the plaintiff: because on these pleadings judgment should have been entered for the defendant ; that the court ought to have told the jury that on these pleadings and proof, this action could not be sustained ; and the third is the same in substance.

From the point to which the attention of the counsel was called by the court, nothing was said about these three first assignments of error.    The case was put on the last count, and that a verdict on it was good : be it so ; but perhaps it will be found that in all actions founded on illegal or immoral considerations or on what is contrary to decency or public good or policy, the form of the action or declaration on the evidence of the claim is immaterial, if the individual injustice or general good forbids such contract, or the law prohibits it ; perhaps there is no case in which it can be made good and available, by the mode of evidencing the agreement or the form of action used to carry it into effect.    To say nothing of gaming prohibited by law, marriage, brokage bonds, obligations entered into in restraint of trade.

In 4 *T. R.* 466, we find a suit on a bill of exchange ; at the trial it came out that the bill or bills were given to pay the balance due for brandy sold in Guernsey to be smuggled into England.    Lord Kenyon said there was no harm in selling brandy ; it was the intent and design of the transaction which made it such that a court ought not to carry it into effect ; and so far was this carried in 5 *Term R.* 592, it was held that a Frenchman who sold brandy to be smuggled into England, could not recover the price *in* England, though he had violated no law of his own country where he made the sale.

The case of Mitchell *v.* Smith, in 1 *Binn.* 110, was debt on a single bill drawn in the usual form.    The consideration was one forbidden by the policy and laws of the state; no regard was paid to the pleadings, and no one suggested that they could have any effect on the decision ; and the cause went on the broad ground that if the transaction out of which the claim arose was forbidden by positive or general law, the claim could not be recovered.

[Hatzfield v. Gulden.]

The power to pardon is a constitutional power ; to alleviate or remit punishment where perhaps there is doubt of guilt ; or where the offence was committed under circumstances extenuating the crime, &c., &c.   The general and spontaneous expression of opinion has had, and ought to have, weight with the governor.   But if undue means are used to obtain petitioners, it may be a great imposition on the governor.   The power to pardon may be considered as a part of the penal code of the state ; it operates after trial to be sure, generally ; but may be exercised before.   It is as important that it should be free from bias, or prejudice, or crime, as that the trial should be so.   No man would say, that if it were possible to procure a pardon by direct payment to a governor, it would be lawful to give one.   To bribe others to deceive and impose on him, only differs in degree.

In this case the first offer came from Gulden to the trustees of the prisoner : they paid in hand, before he stirred, 100 dollars ; and afterwards, at least twice, 15 dollars ; through the whole business he appears to be acting not from pity, not from a sense that the punishment was too severe, not from friendship to the prisoner, but for his own gain and emolument.   At his last interview in the cells, Halloway is called back to witness a promise of payment.

It is not necessary to say whether, after the whole transaction is closed, a person who incidentally paid some postage, or who under special circumstances carried a petition the signatures to which were spontaneously made, may not receive his actual expense and daily pay.   I would say it must be a very special case however to justify this.   But this is not such a case ; and we do not wish to see advertisements, that pardons will be obtained at the lowest price, nor any thing which approaches to it ; and generally, all contracts to change the course of trials, or the effects of trials, whether to obtain a liberation of a prisoner by money to the jailor, or to obtain a pardon by the use of money directly or indirectly, must be void.

Judgment reversed.