[*General Term, April,* 1872.]

## L. E. JONES *v.* JOHN M. SCUDDER.

Courts of justice take notice of all Ohio statutes, general, local, or special, and will therefore recognize a special law incorporating an institution, though such act of incorporation is not alleged in the petition.

S. purchases from J. a controlling interest in the stock of the Eclectic Medical Institute, and as a part consideration, guarantees to him the position of professor in said institution. By the act of incorporation, however, a board of trustees has the exclusive power to appoint the professors.

*Held*, that a contract to so use the stock as to compel the board of trustees to make a certain appointment to a professorship is illegal, and that no action for damages will lie for the breach thereof.

*A. J. Cunningham*, for plaintiff.

*F. Ball, Jr.*, and *Logan & Randall*, for defendant.

HAGANS, J.   This is a demurrer to an amended petition reserved here for our determination.

The amended petition alleges, that on February 13, 1862, the plaintiff was the owner of three hundred and twenty-eight shares of the stock of the Eclectic Medical Institute of Cincinnati, in which he had been for a long time a professor, and had successfully lectured on materia medica and therapeutics to a very large number of students, and had been the manager and financial agent of the college; that

on that day, being desirous of devoting his whole time to lecturing, he sold to the defendant said stock, which was a controlling interest in said college, for $4,340, in annual payments running through seven years, and the same was transferred to the defendant, who immediately pledged it with plaintiff as security for the payment of the money. The contract and terms of sale were reduced to writing, and a copy appended to the petition. At the same time a paper was executed by the defendant, in which he recited his purchase of the stock of the plaintiff, and states that the purchase was for his sole benefit, and adds, "that, so far as I am concerned, it is my desire that Dr. Jones retain his chair of materia medica; and that he shall retain it so long as he sees fit to occupy it. Furthermore, that the educational interests of the institute shall remain in the hands of a board of trustees selected from those who have an interest in the progress of the college. The financial management to be in the hands of Dr. Scudder."

The plaintiff avers, that he tendered his services at the beginning of the session of 1871, as lecturer in the chair named, but that the defendant, having such controlling interest, utterly refused them, or to allow him to have any further connection therewith; that the written papers referred to, do not express the real contract between them; that besides the money agreed to be paid, in fact, the greater part of the consideration of the sale of the stock to the defendant was, that the plaintiff was to occupy said chair, and have the same, and its profits and emoluments, secured and guaranteed to him by defendant for so long a time and succession of years as plaintiff should see fit to accept and discharge the duties of said position; and that such sale of the stock would give to defendant the control of the college financially, as well as of the selection and appointment of its professors, thus enabling him to carry out his part of the alleged contract.

Wherefore he prays for a reformation of the contract of

sale, and for damages to the amount of $6,000 for a breach of it, and for other relief.

This demurrer is to the amended petition, which contains substantially the same averments as the original petition, to which a demurrer had been previously sustained, except that this amended petition omits an allegation of the incorporation of the college. The fact is, that this college was incorporated in 1845 (43 Ohio Local Laws, 357).

The pleader seems to have supposed that the omission of any allegation of the incorporation of this college would prevent any reference to it, because it was a private act, so that the college might be treated as a voluntary association, unless it otherwise appeared, and would thereby substantially change the frame of the pleading. But, besides the fact that he speaks of "stock" and "college," from which we might fairly infer the fact of incorporation, our Supreme Court have expressly decided, in *Brown* v. *The State,* 11 Ohio, 276, "that all Ohio statutes are printed by authority, and though local or special, are nevertheless *public acts,* of which courts of justice *ex officio* take notice."

There can be no doubt of the identity of the college incorporated by the act referred to with the college whose stock was the subject of the sale and the alleged agreement, which college is now in operation. Section 6 of the act provides, " That the board of trustees," which is to consist of not less than eleven nor more than fifteen persons, "shall appoint a faculty which shall consist of at least five professors, who shall be competent to deliver lectures for the proper instruction of students in the various departments of medical science, which shall include . . . materia medica," etc.

The contract, as the parties executed it, merely expresses a desire, on the part of the defendant, that the plaintiff shall retain his chair so long as he sees fit; and certainly no recovery could be had for any change in the defendant's feelings toward the plaintiff, which might result in declining his services. But can we reform the contract, so as to make

it what the demurrer admits it really was, and allow a recovery of the damages claimed for a breach of it?

It seems to us that the effect of such a contract would be to dispense entirely with the board of trustees, and leave the corporation to be operated by private contract wholly, and to defeat the object and purpose of the act. We can not control the judgment and discretion which the law has expressly put in the board of trustees, to be fairly exercised in the appointment of a professor to this chair, nor can we admit that these parties by contract can do it. The exercise of such a power by us would be illegal, and to hold that these parties by contract could do so, would be equally illegal and be against public policy. The performance of the contract would not only be ignoring the board of trustees and a substantial violation of the charter, but would necessarily be to control the freedom and impartiality of the board of trustees in the appointment to this chair, the duty of filling which is expressly put upon the board by the act, by the exercise, on the part of the defendant, of an undue and improper influence upon the board; for it will be observed that the terms of the alleged contract are absolute, and the proposed end is to be accomplished at all hazards, and without reference to anything else than the contract itself. It does not and could not bind the corporation or the trustees, and would be void if it attempted to do so. The contract is, in fact and legal effect, that the defendant will lobby with the board of trustees, which is the legislative body of the corporation, to procure, at all hazards, the appointment of the plaintiff to the chair of materia medica, as long as he sees fit, at the risk of a suit if he failed; and that, too, without reference to the fact that by the law the trustees were to be elected annually by the stockholders, and the contract would imply that the plaintiff, being the controlling stockholder, should so use his power and personal influence as such to fulfill the purposes of the contract, while the higher ends of the college or the

trusts confided to the board, contemplated by the act, were, if necessary, to be of secondary consequence or sacrificed.

In this connection it has not escaped our attention, that this alleged contract was made the subject of a paper separate from the contract of the sale of the stock. It is not too much to say that this circumstance implies that it was to be kept a secret, though there is nothing in the contract to that effect. But this is a circumstance which we can not afford to overlook in deciding upon the nature and effect of the alleged stipulation.

This college is not a merely private speculation for private ends only, to be used as the convenience or interest of the board may suggest. But the public have an interest in it by the very fact of incorporation, and a great educational end is to be subserved. Such a control of the board and appointment of professors as is contemplated by the contract, would injuriously affect the public interest, and be a public scandal as great as the reputed sales of medical degrees in another State. In fact, this contract turns the defendant into a powerful lobbyist, with the added obligation to succeed at all events. It can not be enforced, and even if we could reform it, would seem to be contrary to public policy. It assimilates itself to contracts to get a measure through the legislature, or to procure appointments to public office, which have frequently been held to be against public policy; and for a like reason no damages can be recovered for the breach of such contracts. Among the numerous cases on this subject, it is sufficient to cite *Tool Co.* v. *Norris*, 2 Wallace, 45; *Harris* v. *Roots' Ex'rs*, 10 Barb. 489; *Hartfield* v. *Gordon*, 7 Watts, 152; *Marshal* v. *Baltimore and Ohio R. R.*, 16 How. 314; *Debenham* v. *Ox*, 1 Ves. Sr. 276; *Gray* v. *Hook*, 1 Comst. 449; *Fuller* v. *Dame*, 18 Pick. 472. It is not necessary that the party should actually use undue and improper influence to secure the proposed end, nor do we suppose that anything of the sort would be attempted by the defendant or was contemplated by either plaintiff or defendant. The defend-

ant might entertain a sincere opinion that the plaintiff was entirely fit for the office named, and he doubtless is so, and any recommendation of the plaintiff therefore might be proper. But the principle underlying the contract is one of fitness and expediency. If this stock might be taken in part consideration of the exercise of direct influence upon the board of trustees, and from no other source could the appointment be secured, it would destroy confidence, lead to false and unfair representations, and be productive of mischief. All candidates for these appointments have the right to the unbiased judgment of the board.

The demurrer will be sustained.