## Lucius E. Buck and others v. The First National Bank of Paw Paw.

*Promissory notes: Consideration: Evidence: Admissions.* In an action by a bank upon promissory notes given by the relatives of one who has robbed the bank, and claimed to have been received in consideration and settlement of the indebtedness of the criminal to the plaintiff growing out of such robbery, it is competent for the defense to show the amount of such indebtedness as bearing upon the consideration of the promise sued upon; and upon this question the defendants are not concluded by the admissions of the criminal upon a settlement with the bank, but may show the facts.

Evidence in such an action, of admissions by the criminal that a lot conveyed by his mother in part payment of his indebtedness to the plaintiff prior to the giving of the notes sued upon, was purchased with money belonging to the plaintiff, is irrelevant; the fact that the lot was conveyed in reduction of the indebtedness was material, as it operated as a payment to that extent, but what equitable claim the plaintiff had to such conveyance aside from the indebtedness, was immaterial.

*Promissory notes: Defense: Payment of interest: Good faith: Presumption.* The fact that the defendants at an interview when interest on the notes was arranged, but before the principal fell due, made no objection to the payment of the notes, and paid the interest which fell due before the maturity of the principal, would not raise a presumption against the good faith of the defense afterwards set up in this case; the notes being negotiable, it was not inconsistent with an intent to make the defense eventually, that they should keep silent about it until the whole sum fell due, and so conduct themselves as not to excite the alarm of the plaintiff and thus cause him to negotiate the notes.

*Promissory notes: Consideration: Public policy.* A note given to a bank in consideration of assurances on the part of its officers that they would sign a petition to the judge for clemency towards a relative of the makers who is under arrest for robbing the bank, or that they would be more likely to do so, or that in any manner they would exercise, or be more likely to exercise, influ-

ence with the court to secure a lighter sentence, is based upon a considera-
tion opposed to public policy, and is consequently void; and this upon the
ground of the tendency of such an understanding to encourage deception of the
judge, and to mislead him in the facts upon which his judicial action should be
based.

*Promissory notes: Consideration: Evidence.* Neither the sympathy of such rela-
tives nor their relationship to the criminal could have any bearing upon the
case, since neither of these separately, nor both together, could constitute a
legal support to the promise; nor, provided the only inducement to make the
promise was the desire to shield their relative, is it material, as between the
makers and the bank, that the criminal was indebted to the bank to the amount
of the notes given.

*Heard May 9.    Decided May 16.*

Error to Van Buren Circuit.

*Foster & Coleman* and *F. Muzzy*, for plaintiffs in error.

*Thomas H. Stephenson* and *Severens, Potter & Boudeman,*
for defendant in error.

COOLEY, J.

Suit was brought in the court below upon a promissory
note given by the plaintiffs in error, in part payment, as it
is claimed, of an indebtedness to the defendant in error, of
one R. M. Buck. The main facts which led to the giving
of the note are not in dispute. R. M. Buck had robbed
the bank of a large sum, and had absconded. After a
long search he was found, arrested and brought back to
Paw Paw. The officers of the bank kept him in custody
for a while before handing him over to the authorities, and
during this time a large portion of his indebtedness to the
bank was arranged by his turning over his own property,
and by his mother deeding to the bank a lot to which she
had title. The plaintiffs in error were relatives of R. M.
Buck, and during the same time they were induced to give
to the bank certain notes, of which the note in suit was
one. It was claimed on the part of the bank that these
notes were applied in payment as far as they would go,
but that a considerable balance still remained. R. M.
Buck was delivered to the authorities on a complaint for

the robbery of the bank, the same day the notes were given, and he was convicted on plea of guilty, and sentenced to the state prison. When this note fell due, the makers refused to pay, claiming their signatures were obtained by means of illegal inducements held out to them that R. M. Buck should not be prosecuted, or should be favored in the prosecution if they would give them. The bank brought suit and has recovered judgment, which is before us for review on exceptions.

The exceptions are numerous, and a number of them which we think not well taken and not important, we shall not discuss. As to others, it will be sufficient to state the general principles which were applicable and should have been applied. It is complained among other things that the court excluded questions put to witnesses by counsel for the defense, designed to place before the jury the amount of the indebtedness of R. M. Buck to the bank at the time these notes were given. As it was claimed by the bank that that indebtedness was the consideration for the notes, any evidence which would go to show that R. M. Buck did not owe the bank the sum represented by the notes was clearly admissible for the purpose of showing that on this theory the notes were given without consideration. And in this connection it may be proper to state that we think the court erred in charging the jury that in determining whether there was an indebtedness from R. M. Buck to the bank at the time this note was given, if the jury find from the evidence that upon an accounting between the bank and said R. M. Buck, prior to the giving of the notes, there was a balance agreed by said Buck to be due the bank, then it is not competent for these parties to contest the question of such indebtedness, upon the ground of any pretended unfairness in such settlement, nor upon the ground that Buck was under duress at the time, and that such defense, if the facts existed to support it, could only be urged by R. M. Buck himself. The court in giving this charge treated the case as if it were one of a contract by

R. M. Buck to which he might have a personal defense of duress if he saw fit to resort to it, but which the law would permit no one else to make if he did not. This, however, was not such a case. The question involved was, whether R. M. Buck owed the bank the amount of the notes which these parties had given. If he did not, then, on the plaintiff's theory, the consideration for the notes failed. His admission that he did was sufficient evidence of the fact until disproved, but it could conclude no one. Third parties who had made promises on an assumption that the indebtedness existed, were at liberty to show that the admission was founded in mistake, or extorted by fear, or even made corruptly. As it affected them the question was, not whether an admission was made, but whether the fact existed to which the admission had reference.

Evidence was received on behalf of the plaintiffs below, to show R. M. Buck's admission that the lot his mother conveyed to the bank was purchased with money belonging to the bank. This had no relevancy to the present controversy. The fact that the lot was conveyed to the bank in reduction of R. M. Buck's indebtedness, was important, as the fact of any other payment on that indebtedness would be; but what equitable claim the bank might have had to such conveyance was of no concern to these defendants. They were interested to know whether R. M. Buck owed the bank what they had promised to pay for him, but it was immaterial to them on what grounds other persons had seen fit to reduce that amount to its present sum.

The plaintiff below was also permitted to give evidence, in order to raise a presumption that the defense which had been set up was unfounded, that the defendants, or one of them, at a certain interview when interest on the notes was arranged, but before the principal fell due, made no objection to the payment of the notes. We think no such presumption could safely be drawn from this evidence. The notes were negotiable, and if the bank officers should be apprised of an intended defense before they fell due, it

would be reasonable to expect they would endeavor to protect themselves by negotiating them. The makers of the notes were consequently interested in keeping silent regarding their defense, and it is as legitimate to refer their action to prudence as to any other motive. The evidence, we think, should not have been received. And for the same reason no inference against the *bona fides* of the defense could safely be drawn from the mere fact of the payment of interest by the makers of the notes, before the maturity of the principal. To disclose their defense at that time would have been to defeat it, so far, at least, as concerned the principal.

The most important question in the case arises upon the charge of the court that "if the jury should find, as claimed by the plaintiff, that what the officers of the bank stated to the defendants about prosecuting R. M. Buck was, that in case the notes were signed and the loss of the bank thus partially made up, the officers of the bank would be more likely to sign a petition to the court for clemency in the sentence of R. M. Buck, or any thing of like import, then the jury are instructed that such representations or assurances would constitute no defense to the note." And upon the refusal to charge that "if the jury find that after R. M. Buck was arrested, either with or without process, the plaintiff's agents or attorneys made promises to mitigate any punishment which he might be liable to receive, and the defendants were induced by such promises to give, and on account of such promises did give, the note in question, then the note is invalid."

This charge and refusal to charge present the question directly whether it is legitimate, proper and lawful for private individuals to sign petitions to, or use influence with, a court to induce the court to mitigate the punishment of a convicted criminal, and whether a promise, the motive to make which was the signing of such petition, or the employment of such influence, can be enforced in law.

27 MICH.—38.

. The theory of criminal punishment is that it should be graduated to the heinousness of the crime, and so as most effectually to prevent the like offenses in the future. Other considerations are not admissible, and whatever tends to withdraw attention from these, and to cause the penalty to be imposed on other grounds, may be said to be opposed to public policy. Mercy to the criminal is admissible when it may be supposed likely to influence a reformation in himself or his associates, or to have a beneficial effect upon community in general. Whatever the criminal has already suffered in consequence of the crime may properly be considered as a part of his punishment, and may justly be allowed to mitigate the judicial sentence. And if he has made restitution to the party who was the sufferer from the crime, this also may be taken into the account, not only as it may be considered in the nature of a penalty paid, but also because, if voluntarily made, it may be looked upon as some evidence of intended reformation.

In order to properly consider the question as it presents itself in this case, it must be borne in mind that the makers of this note are accused of no crime, and that they were under neither a legal nor a moral obligation to make to the bank any reparation. Their position was only that of persons who were unfortunate in having a relative commit a felony, and whose sympathies were naturally aroused in contemplation of the punishment that was likely to be inflicted upon him. The bank, on the other hand, had been the sufferer from the crime, and its officers naturally were anxious to make up the loss in some manner. And it is alleged that they have made use of this sympathy for the purpose, by promising or holding out inducements that their influence should be employed to mitigate the punishment.

As elements in the consideration for the promise made by the note, the sympathy of the makers and their relationship to the criminal must be left wholly out of view·

Neither of these separately, nor both together, could constitute a legal support to the promise. Nor, on the theory on which the instructions to the jury were given, can the debt of R. M. Buck be regarded as the sole consideration for the giving of the notes, for the makers of the notes were not connected with that debt, and something besides its mere existence was required to induce them to make any payment upon it. The desire to make whole their loss, was the inducement to the bank to negotiate with these parties, but the desire to shield their relative, is claimed to have been the motive with the defendants below, for any promise made by them. This being so, it would seem to be wholly immaterial to the legal questions involved in this case, whether the loss which the bank had suffered and which the defendants below were desired to make up, was one with which their relative had any thing to do or not. If the bank officers were men of such standing, character and reputation for integrity and sound judgment, that the judge would be likely to attach great importance to their opinions as to the propriety of clemency, and if they should promise to make use of any influence they might have with him, on the relatives of the criminal making good to them some business loss they had suffered, no matter by whom or from what cause, the case in its legal aspects would be the same that it is now. And going a step further, the fact of a loss having occurred will be found of no importance whatever. It was only necessary that the bank officers should give or promise something of value, whether money or other property or services, or submit to some inconvenience, and that the defendants should receive this as the equivalent of their promise to pay. And if the real inducement to the defendants to give the notes was the assurance of the officers that they would sign, or be more likely to sign, a petition for favor to R. M. Buck, then it is obvious that the transaction, stripped of whatever in a legal point of view was immaterial, was simply this: One party was to give a pecuniary consideration, and the equivalent was, that

another would sign, or promise to sign, or be more likely to sign, a petition for the mitigation of a criminal punishment. It is too plain for argument that such a transaction is not only wanting in the requisites of a legal contract, but that in its tendency it is immoral and pernicious. No actual wrong or thought of wrong is imputed to the parties concerned in this instance; but if the law is as it was laid out at the circuit, then any promise, in consideration that another, supposed to be influential with a judge, would make use of his influence in modifying a criminal punishment, would be a promise which could be enforced in the courts.

It is immaterial that the influence was to be exerted by means of petition. The petition is the proper mode for a constituent to make known to his representative his wants, opinions, or sentiments, or to represent to the appointing power the qualifications or deficiencies of candidates for office, or to give to the executive the reasons for a pardon or reprieve. But a petition, using the word in its ordinary sense, is not a proper means of influencing the action of a court. To present to a court information regarding a convicted person, his former course and conduct, his deportment since the crime, the probable motives leading to its commission, and any facts having legitimate bearing upon the question of his probable reformation, or upon the necessity of punishment for its effect upon others, is not only proper, but the judge himself will take pains to seek such information, and will regret the necessity that may exist in any case of proceeding to sentence without it. And while it is obviously proper that such information should be openly and publicly given in court, in order to guard against the judge being misled by interested statements privately made, yet there is no legal rule which will preclude written information being conveyed to the judge, which he will take such measures to test the accuracy of as the case may seem to him to require. But to hold that petitions to the judge to mitigate a sentence are not only

proper, but that the getting up and signing such petitions may be a legal consideration for a promise to pay money, is to throw open the administration of justice to an invasion of corrupt motives, and to call around the sessions of courts a similar class of mercenary men to that which now unfortunately is so often found about our legislative halls, seeking to shape the public laws to accomplish private objects.

It is plain that no judge can have confidence in the representations made to him in criminal cases, if it is legitimate for individuals to hire out their services in order to influence his action by private statements made out of court. A rule of law which would permit this must have a direct tendency to make the punishment of offenders depend, not upon the heinousness of their offense, their own depravity, or the probable effect upon the community, but upon the pecuniary ability of the offender or his friends to set at work influences about the judge which shall exaggerate whatever might properly be said in favor of clemency, invent reasons for the purpose where none exist, disparage and defame the prosecutor and the witnesses wherever necessary, and keep from the knowledge of the judge, so far as possible, whatever in the character and history of the criminal would show him a proper subject for severity, and thereby deceive the judge upon the very points on which his information ought to be most full and accurate and obtained from the most impartial and disinterested sources. Such consequences can only be precluded by an inflexible rule of law, that services or assistance of any kind or any description, calculated or intended to influence the action of a court, except in the open and public modes of argument and evidence which the law provides for and allows, can never be a legal consideration for the promise of a pecuniary return.

We do not stop to point out that assistance from pecuniary motives to lighten the punishment of a criminal is

the same in nature and only different in degree from assistance from the like motives to shield him from punishment entirely.    We prefer to put this case entirely upon the tendency such an understanding as the defendants set up, must have to encourage deception of the judge, and to mislead him in the facts upon which his judicial action should be based.

Having referred to the case of petitions to the legislative and executive departments of the government, it may be proper to remark that even as to such petitions, any promise to pay money in consideration of signing the same, or of the employment of solicitations to influence or secure official action in any form whatever, other than by the use of open and legitimate evidence or argument, would be entirely without consideration, because opposed to public policy.    This has been so often decided and under such a variety of circumstances, that we content ourselves with a reference to a few of the reported cases.—*Pingry v. Washburn, 1 Aiken, 264; Clippinger v. Hepbaugh, 5 W. & S., 315; Hatzfield v. Gulden, 7 Watts, 152; Fuller v. Dame, 18 Pick., 472; Wood v. McCann, 6 Dana, 366; Marshall v. B. & O. R. R. Co., 16 How., 314; Harris v. Roof, 10 Barb., 489; Frost v. Belmont, 6 Allen, 152; Sedgwick v. Stanton, 14 N. Y., 289; Frankfort v. Winterport, 54 Me., 250; Martin v. Wade, 37 Cal., 168.*

The highest considerations of public policy demand that the pecuniary interests of individuals should not be recognized as legitimate motives to influence the action of official persons, and that in the case of courts most especially, every avenue should be carefully guarded against the intrusion of such motives.    Caution is especially required in the case of parties injured by a crime, who apply to avert or mitigate the penalty, because the court would be likely to give exceptional weight to their suggestions, and to assume that their position in relation to the case has led them to inquire fully and particularly into all the facts, and into the pre-

vious course and character of the criminal, and that as sufferers from the wrong they would not ask clemency unless strong and meritorious reasons existed for granting it.

We are, therefore, all of opinion that the defendants below were entitled to have the jury instructed that if the signatures to the notes were obtained by assurances on the part of the officers of the bank or of any one of them, that if the parties would give the notes, the officers or any of them would sign a petition to the judge for clemency to R. M. Buck in his sentence, or that they would be more likely to do so, or that in any manner they would exercise, or be more likely to exercise influence with the court to secure a lighter sentence, then the promise of the defendants expressed in the notes was based upon a consideration opposed to public policy, and consequently void.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.