# In the Court of Common Pleas of Schuylkill County.

## LIPPINCOTT ET AL. for the use of WILLIAM VERNER v. THE MINE HILL AND SCHUYLKILL HAVEN R. R. Co.

1.  When a verdict is taken subject to a reserved point, the verdict should be for the plaintiff.

2.  Where a railroad company agreed with the landowners over whose land the road crossed, that in consideration of paying no damage for the right of way, the landholders might remove all coal beneath the road-bed—the landlords to first give written notice to the company when they were ready to move the coal, at which time the company were to either change the route—or secure the road from damage—such an agreement is not illegal or against public policy so as to relieve the company from the obligation of performing their contract.

3.  The landowners will not be permitted to mine out all coal beneath a railroad so as to endanger the travelling public.

4.  The owner of the surface has a right to subjacent supports—but this may be qualified by his conveyance.

5.  Railroads are private corporations.

6.  Previous to the act of 11 April, 1862, a railroad company having once selected the location of their road could not change it, against the consent of the owner of the land, for the exercise of eminent domain being derogatory to private right the authority must be strictly construed. But the company might change with the consent of the land-owner.

**Rule to show cause why the verdict in the above case should not be set aside and the judgment entered for the defendant non obstante veredicto.**

Opinion delivered January 25; 1875, by

WALKER, J.   On the trial of this case the defendants in their third point requested the court to instruct the jury as follows:

That by the grant of the right of way to the Mine Hill and Schuylkill Haven railroad company, across the Catharine Groh tract, the right to subjacent support of said way passed to said company as an incident, and if the agreement of Feb. 20, 1855, was intended to permit the landlords, or their tenants to mine out the coal so near to the surface as to remove such supports, and cause the railway bed to fall in, the agreement would be in such respect repugnant to the grant of the right of way, against the policy of the law, and void, and the verdict should be for the defendants.

The court declined to instruct the jury as requested, and sealed a bill of exceptions, but reserved the question of law embraced therein for future consideration, and the verdict being for the plaintiffs, the court directed the above rule to be entered, which on the 22d of December, was ably argued at length before a full court of all the judges.

By the 5th section of the act of 28th March, 1835.   (Pur. Dig. 497

Pl. 21. P. L. 90.) any one of the judges of the District Court of Philadelphia may reserve questions of law for the consideration and judgment of all the judges of the said court sitting together. 1 Troubat & Haly, 588. And by the act of 22 April, 1863, P. L. 554, the right of entering judgments on reserved points is extended to the Courts of Common Pleas of the several counties of this Commonwealth. Pur. Dig. 1168, Pl. 28. But when the verdict is taken subject to a reserved question the verdict should be for the plaintiff. Robinson v. Myers, 17 P. F. S. 18. A reservation can only be of a pure question of law, and the facts should be found by a jury or agreed upon. Campbell v. O'Neill, 14 P. F. S. 290 ; Ferguson v. Wright, 11 P. F. S., 258. And the reserved question must be such as to rule the case. Wilde v. Trainor, 9 P. F. S. 439.

An affirmative answer to the defendants 3d point denies the entire right of the plaintiffs to recover in this action. As the plaintiffs have doubted the right of the court to enter the above rule, in a case like the present one, we have referred to these authorities to sustain our action.

Under the terms of the defendants' charter, and the general railroad act of 19 Feb. 1849, (Pur. Dig. 1219, Pl. 35) before the defendants could enter upon or take possession of any land for the railroad, they are required to make ample compensation to the owner or owners of the land, or tender adequate security therefor.

In their agreement of 20th February, 1855, the defendants in consideration of not paying damages for the right of way, covenanted with the landlords, Dundas & Richardson, 'that they might mine out all coal beneath the road, as though the railroad had not been constructed, and that when they or their tenants were ready to mine such coal, they should give written notice, and the railroad company would take proper measures to *adjust, secure and maintain* their road, or *change* its location. The material question is *whether the reservation is repugnant to the grant.*

To support this position it is urged :

1st. That a change of the road is unauthorized by law.

2nd. That the safety of the public and the exercise of the chartered rights of the company demand that the road bed should not be undermined or endangered and therefore an agreement to do that is against public policy.

It should be borne in mind that the right of a railroad company is only to occupy the land, and is an *easement*, not an *interest* in the land. Western R. R. Co. v. Johnson, 9 P. F. S. 290; Big Mountain Imp. Co. Appeal, 4 P. F. S. 361, and cases cited. There can be no doubt that the owner of coal land, over which a railroad passes will not be

permitted to work out all the coal beneath the road bed, so as to cause the ground to subside, and thus jeopardize the lives of travelers.

When that has been attempted to be done this Court has restrained the working by injunction.

In the case of the Philadelphia and Reading R. R. Co. v. Verner, and of same plaintiff ·v. Lawrence, Merkle & Co., it was done by this court, and we think properly so. But the question here is as to the liability of the defendants upon their contract.

Of course if it is against public policy, or illegal, or if it is rendered impossible by the act of the law, or by the act of God, it is void, and there can be no recovery by virtue of it, but it would be otherwise if occasioned by accident or some unforseen circumstance. Addison on Contracts, 1123-4; 2 Parsons on Contracts, 186-7; 6 Dana, 366; Hatzfield v. Gulden ; 7 Watts, 152 ; Mayor of Norwick v. Norfold R. R. Co. 20 Eng. Law & Eq., 120; Clippenger v. Hepbaugh, 5 W. & S., 315.

By the terms of the agreement the defendants were required to secure or change their road when the coal was to be removed. They contend that their power was exhausted when they located their track, and they had no authority by law afterwards to change it, and therefore that part of the contract was illegal, and they rely upon the following authorities : Marrow v. Common., 12 Wr. 305 ; Holden v. Cole, 1 Barr, 303 ; McMartrie v. Stewart: 9 H. 322 ; Furness v. Furness, 5 C., 15. But all these cases refer to public highways under the general road law, and in our opinion do not apply to railroads.

Without doubt the defendants under their charter would not be permitted, previous to the 11th April, 1862, P. L. 498, after locating their road to change it. As against the owner of the land their power was exhausted, for as the exercise of eminent domain is derogatory of private right, the authority must be strictly construed.

But where the company own the land, or act with the consent of the owner, we see no substantial reason why this change should not be made when it is required for public safety. In Hopkins v. The Great Northern R. R. Co., Godefroi & Shortt's Law of Railway Cos., 326. Excessive lateral deviation was not restrained by injunction where it appeared that the plaintiff was cognizant of the fact and acquiesced in it.

*As to the second objection* :

In Pennsylvania there may be two estates in land, one vested in the owner of the surface of the ground, and the other in the owner of the minerals below the surface. Caldwell v. Fulton, 7 Casey, 483. The owner of the surface takes it subject to subjacent supports unless otherwise provided for in the title deeds.

Subjacent supports are incident to the use and enjoyment of the surface, and the owner of the minerals has a servient right, and is re-

quired, in working his mines, to leave sufficient pillars to support the surface. He is obliged to use his property so as to injure his neighbor as little as possible. *Sic utere tno ut alienum non laedas* is the general rule. Harris v. Ryding, 5 M. & W., 60: Earl of Glasgow v. The Alum Co., 8 Eng. Law & Eq., Rep. 13; Humphries v. Brogden, 1 Eng. Law & Eq., 241; Caledonia Railway Co. v. Sprout, 39 Eng. Law & Eq. 16; Same Plaintiff v. Balhaven, 40 Eng. L. & Eq., 1; Rodgers on Mines, 200-1, 459-60; Washburne on Easements, 478-9.* And this is the law upon this subject, *unless it be* controlled by the conveyance; Jones v. Wagner, 16 P. F. S. 434; Smart v. Morton, 30 Eng. Law & Eq., Rep. 385.

In Rowbotham v. Wilson, 30 Eng. Law & Eq., 236, it is held that the owner of the surface of the ground may have only a qualified right of support from the minerals, if it is so expressed in the deed.

And if the owner working the minerals, in an approved manner, cause the ground to subside, the owner of the surface has no claim of damages against him. It is *damnum absque injuria*.

This is conceded to be the law with reference to individuals, but it is urged that it does not apply to a railroad company, having public duties to perform.

This leads us to inquire whether there be any difference between a *private individual* and a railroad company, in a case like the present as to the performance of their contracts. Corporations are either *public or private*.

Generally speaking public corporations are towns, cities, counties and parishes existing for public purposes. Private corporations are, banks, insurance, roads, canals, bridges or when the stock is owned by individuals, but their use may be public. Dartmouth College v. Woodward, 4 Wheat 664, 2 Kents Com. 222. Angell and Ames on corporations § 14.

Railroads are private corporations. Angell and Ames on corporations § 31. Bonaparte v. Camden & Amboy R. R. Co. , 1 Baldwin 205. Alabama R. R. Co. v. Kidd 29 Al. Rep. 221.

If this company be a *private* corporation as these authorities appear to show then it is difficult to understand why they should be released from an obligation that would certainly bind a private individual.

Is the defendants' contract to adjust, secure and maintain their road illegal by reason of impossibility of performance.

In England, under the canal act, the owner of minerals is prohibited from working them within 12 yards of a canal, without notice, and by another clause of the same act, three months' notice is required to be given to the company to inspect the mines and pay for the coal left to support the canal.

When such notice was given and the company failed to inspect the mines or pay for the coal it was decided that the lessee might work out the coal, and would not be responsible for damages for subsidence to the company, if it was done in a workmanlike manner. Dudley Canal Navigation Co. v. Grazebrook, 20 Eng. Com. Law 344.

Under the English consolidated railway act of 1845, the same privilege is given to the owner to remove the coal under the bed of the road after notice and failure of the company to purchase. Godefroi & Shortt. Law of railway companies 387 § 78. See also Wysley Canal Co. v. Bradley 7 East. 368.

The contract of the 20 Feb., 1855, clearly shows that both parties contemplated the removal of all the coal beneath the road bed, in consideration of the damages of the right of way over the land, and we were asked in defendants' 3d point to say, as a pure question of law that this contract was void, and that, without reference to the evidence, whether the road could be easily secured, or whether it was impossible to secure it.

Will it be contended, if the evidence had established that the road could have been made safe, without any difficulty and with very little expense, that we would have been justified in affirming this point? Is not the feasibility and possibility of securing and maintaining the road a question wholly for the jury, upon which they could not pass if we had directed a verdict for the defendants? Could we say that the contract was void, without reference to its impossibility?

We see no reason why the defendants if they did not wish to change their route by the consent of the landowners, could not have adjusted, secured and maintained their road either by filling up the holes or bridging over the crops of veins. It was a question wholly of expense, (of great expense, no doubt) not of impossibility.

If the performance of the covenants was more costly than had been contemplated when the contract was made, it furnishes no sufficient reason why a party should be relieved from a bad bargain. It is not a question of public policy, for the public interests are in no way concerned in the expense of the company's contracts. We are all clearly of the opinion that the court was right in declining to affirm the defendants' third point.

Therefore the rule *non obstante veredicto* is discharged.