## Knipe et al. v. Procher et al.

*Bernard E. DiJoseph*, for plaintiffs.

*Benjamin R. Shanken*, for defendants.

FORREST, J., December 29, 1950.—This case comes before us on the preliminary objection that the counterclaim alleges a contract contrary to public policy, in

that it demands payment of money purportedly promised for performing another's official duties as a postmaster.

Plaintiffs' complaint is in three counts, while defendants' counterclaim lists two, but for present purposes we need concern ourselves only with the first count of the counterclaim. The relevant facts can be taken from the admissions in the pleadings. On July 7, 1945, plaintiffs entered into a written agreement to sell certain properties in Horsham Township, this county, to defendants. On one property was a store in which plaintiff Wilmer S. Knipe, who was Postmaster of Horsham, conducted the post office. On July 23, 1945, plaintiff Wilmer S. Knipe and defendant Roy Procher entered into an oral agreement that Procher was to perform Knipe's duties as postmaster, in return for which Knipe would turn over to him all of his pay from the United States Government for that service. Procher entered upon these duties and performed them from July 23, 1945, until January 31, 1946, during which time Knipe received $1,254.07 from the Government of the United States.

Defendant Roy Procher claims this amount is due to him, while Knipe contends that the contract was illegal, void, impertinent and scandalous because a postmastership is a public office which may not be bought and sold and that the contract therefore may not be enforced. With this contention we must agree. A postmaster is a public official and as such "is bound to exercise his judgment for the public benefit and any contract by which this exercise of his judgment is sold for his private emolument interferes with the proper discharge of his duties as a public officer, and such contract is against public policy and void": 49 C. J. 1138.

"A party to an illegal bargain can neither recover damages for breach thereof nor, by rescinding the

bargain, recover the performance that he has rendered thereunder or its value . . .": A. L. I. Restatement of the Law of Contracts §598.

"It is not essential that evil actually follows the enforcement of the contract. What is struck at in the refusal to enforce contracts of this kind is tendency to evil in other cases. Enforcement of such contracts when actual evil does not follow would destroy the safeguards of the law and lessen the prevention of abuses": Borden v. Ellis, 158 Pa. Superior Ct. 259, 262 (1945).

The matter at bar is similar to Filson's Trustees v. Himes, 5 Pa. 452 (1846). In that case the vendor of the lease of a store, stock of goods, etc., covenanted with the vendee that the post office in the neighborhood should be removed to the store, and that the vendee be appointed postmaster, the sale and covenant being in consideration of the gross sum to be paid. It was held that the covenant was illegal and could not be enforced because to do so would be contrary to public policy.

In Hunter v. Nolf, 71 Pa. 282 (1872), plaintiff and defendants were applicants to the same public office. Plaintiff stepped aside after the parties agreed that defendant should be appointed and that they would divide the work and the salary. Although plaintiff performed half of the work, recovery on the agreement was not allowed nor was plaintiff permitted to recover the value of his services for policy reasons. See also Williston on Contracts, §§417 and 1730, and cases there cited, and 17 C. J. S. 586.

It follows that the preliminary objection to the first count of defendants' counterclaim is well taken.

And now, December 29, 1950, for the reasons set forth in the foregoing opinion, plaintiffs' preliminary objection to defendants' counterclaim is sustained and the first count of defendants' counterclaim is stricken off.