## THOMAS WILDEY *vs.* CHAS. COLLIER and BETSEY COLLIER, his wife.

A mortgage to secure a sum of money due to the mortgagee, but executed upon consideration that he would obtain, without improper means, a *nolle prosequi* from the governor on a pending indictment for a fraudulent conspiracy against the parties who obtained the money from him, is against public policy and void.

Considerations of public policy are often deemed paramount to private rights, and when they are opposed the latter must yield.

Contracts for obtaining the passage of laws by the legislature, when the character in which the parties solicit the passage of them is unknown, are invalid, and cannot be enforced.

No compromise for arresting prosecutions by obtaining a *nolle prosequi* or *otherwise* in case of conspiracies to defraud, has ever been allowed.

If the means by which the *nolle prosequi* was obtained from the governor could affect the case, the *onus* would be upon the party obtaining it to show them.

35 v.7

Appeal from the Equity Side of the Superior Court for Baltimore city.

The appellees, Collier and wife, on the 19th of October 1849, executed a mortgage of certain leasehold property in the city of Baltimore, belonging to the wife, to Wildey, the appellant, to secure the payment to him of five promissory notes, drawn by John M. Slaney, in favor of and endorsed by Collier, amounting to $2558.96. This mortgage was executed under the act of 1833, ch. 181, and, upon petition, a decree was passed for the sale of the property on the 7th of April 1852, under which it was sold. The appellees objected to the ratification of the sale, because, among other reasons, the notes, to secure which the mortgage was executed, were given in consideration of a promise and agreement by Wildey to procure a *nolle prosequi* from the governor, on a certain indictment then pending in Baltimore city court against Slaney, the drawer of the notes, and his father, and on threats to obtain similar proceedings against Collier, unless he united with his wife in executing said mortgage.

The testimony taken in support of this exception shows, that an indictment was found in the city court on the 21st of June 1849, against the two Slaneys, father and son, for a fraudulently conspiracy to obtain money from Wildey, and to cheat and defraud him thereof; that Collier was a partner in business with the younger Slaney, but no indictment was found against him; that after this indictment was found a proposition for a settlement and compromise was made between the parties, which resulted in the execution of the mortgage, which was to remain in the hands of Collier's agent until a *nolle prosequi* was obtained by Wildey, which was obtained, and the mortgage was then delivered to Wildey; that the obtention of this *nolle·prosequi* by Wildey was a part of this compromise and settlement, and that Mrs. Collier was informed of all the circumstances and executed the mortgage with a full knowledge of them, and that if the notes were not paid the property would have to be sold to pay them, and was much distressed about the matter.

The court below, (FRICK, J.,) sustained this exception, and annulled the sale and the decree for the sale. Accompanying his decree he delivered an opinion, in which, after stating the facts of the case, he says:

"I have searched the testimony in vain for some exposition that would justify me in sustaining the contract. It is manifest that some atrocious fraud perpetrated upon this complainant induced the extent of sacrifice which these parties proposed to make to avoid the consequences. They had rendered themselves open to criminal prosecutions for it and two of them had actually been indicted. Public retributive justice was about to reach them when the complainant, seeking, from the just impulse of self-preservation, to protect himself, becomes a second time their victim. In arresting the prosecution of the indictment, to which he was the principal witness, by his own influence and agency, as the basis of this compromise, he has entered into a contract which is denounced by the law as against public policy, and whatever hardships it inflicts upon him individually this court is not at liberty to uphold it.

"The doctrine is indisputable, that any contract or security made in consideration of dropping a criminal prosecution, soliciting a pardon or compounding a public offence, is invalid. 1 *Smith's Lead. Cases*, 153, and *note*. 1 *Chitty's Crim. Law*, 4. Such contracts having a tendency to obstruct the administration of justice, or thwart the public interest in bringing offenders to justice by way of example, are properly discountenanced in law and in equity. Every consideration of sound public policy dictates, that violations of the criminal law of the State should be duly prosecuted. To sanction the submission of the offence to the arbitrament or compromise of the injured party, and on the condition that public justice shall be eluded, would do violence to the just principles of the social compact. Whatever views, therefore, I may entertain of the personal hardship inflicted by it, I am bound to sustain the exception." The complainant appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Charles H. Pitts* for the appellant.

The only question in this case is, whether a mortgage executed upon the consideration upon which the record discloses this to have been made, is void because it is against public policy? The whole class of cases where contracts for obtaining pardons and writs of *nolle prosequi* have been held invalid, consist of those where the contract was based *solely* upon that consideration, but the contract in this case had a valid money consideration independent of the promise to obtain the *nolle prosequi.* The offence for which the indictment was found, and in which Collier was implicated, was for obtaining money from Wildey under false pretences, restitution of which would have been awarded to him under the act of 1809, ch. 138, sec. 6. The money was his, and he could have maintained an action for money had and received to recover it, and it was this money which constituted the consideration of the mortgage. The presumption of law is in favor of the legality of contracts: *Chitty on Cont.*, 571, (*Ed. of* 1851;) 4 *Mees. & Wels.*, 654, *Lewis vs. Davison;* and a doubtful matter of public policy will not avoid a contract, *Chitty on Cont.*, 217; the test is, whether the party is obliged to rely upon the illegal contract to obtain the relief he asks. *Ibid.*, 570.

But is this contract necessarily unlawful? The governor, by the laws and constitution, had the power to grant the *nolle prosequi*, and Wildey, or any other citizen, had the right to go to the governor and solicit it. There is nothing illegal in this. If he went *openly* to the governor and said, "I am the paid agent of Collier to solicit a *nolle prosequi* in his case," and had represented the fact to him, that upon the granting of it depended the recovery of the money of which he had been defrauded, it would have been perfectly lawful, and there is no law which says that a contract to do this is void. The case of *Marshall vs. The Baltimore & Ohio Railroad Co.,*

16 *How.*, 334, 335, sanctions the position, that public officers and legislatures may be approached *openly*, and where there is no concealment of the *agency*, and that contracts to do this are valid. A party has the right to employ *counsel* to solicit a *nolle prosequi*, just as much as he has to employ them to go into the *courts* and before *juries*. The ground upon which contracts to solicit pardons are held void is, that they tend to corrupt public officers and public morals. Such was the case in 3 *Esp.*, 253, where a *stranger* sold his influence to obtain a pardon and went to the authorities in *disguise*, and not openly avowing himself the party's agent. But that is not the present case, and besides, our laws look not merely to the punishment of the public wrong, but also to the reparation of the private injury to the party injured. The case of *Keir vs. Leeman*, in 51 *Eng. C. L. Rep.*, 308, and 58 *Do.*, 371, goes to the extent, that wherever a private injury, for which the party may have his civil suit, accompanies a public wrong, the offence may be compromised.

Nothing as to the equity of the case can be deduced from the fact that the property mortgaged belonged to the wife, because the record shows that she did not derive it by inheritance, but by conveyance from *her husband*, scarcely a year previous to the mortgage.

*Cornelius McLean* for the appellees, argued, that the decree ought to be affirmed:

1st. Because it clearly appears from the testimony that the mortgaged property was the trust property of Mrs. Collier, which she was induced to mortgage under fears and apprehensions of criminal proceedings against her husband, which she hoped to avoid by such a step, and without any such consideration as would induce a court of equity to sustain such a conveyance in the absence of the legal estate. 2 *Story's Eq.*, secs. 1388, 1390, 1395. It was the separate property of the wife and she had no power to dispose of it. 8 *Gill*, 139, *Smith vs. Morgan*.

2nd. Because the consideration in this case having been

the obtaining of a *nolle prosequi* to stop the course of justice, it is one which, neither in law or equity, can be upheld. So far as Mrs. Collier is concerned, the obtention of the *nolle prosequi* was the consideration upon which she executed the mortgage. She could have had no motive in doing so, except to avoid the disgrace of a public prosecution of her husband, and that she looked to the *nolle prosequi* as the consideration, is beyond all question. Such agreements as these, even under the most favorable circumstances, are not valid. In the case of *Collins vs. Blantern*, 2 *Wilson*, 341, commented on in 1 *Smith's Lead. Cases*, 153, a *bond*, the consideration of which was that the obligee should not appear and prosecute for perjury, was held void. In *Norman vs. Cole*, 3 *Esp.*, 253, a contract to obtain a pardon was held invalid. The objection to such contracts is obvious and extends to various agreements. See 1 *Chitty's Crim. Law*, 4. 30 *Maine Rep.*, 105, *Shaw vs. Reed.* 5 *East*, 301, *Edgcombe vs. Rodd, et al.* 3 *Term Rep.*, 17, *Nerot vs. Wallace, et al.* 11 *Wheat.*, 258, *Armstrong vs. Toler.* In the case of *Keir vs. Leeman*, 58 *Eng. C. L. Rep.*, 380, there was an assault and battery, with a riot, and it was held that the riot was so much of a public offence that it could not be compromised. The present case is much stronger than that, for the offence here was a fraud and conspiracy to obtain money.

TUCK, J., delivered the opinion of this court.

We suppose that the money claimed in this case was due to the appellant, and that his object in taking the mortgage was to secure his debt, without any design to obtain a *nolle prosequi* by improper means. It is quite apparent, that Mrs. Collier, not being indebted to the appellant, became a party to the mortgage for the sole purpose of inducing him to use his efforts in obtaining the *nolle prosequi*, making her property responsible for a debt not her own. This, it is true, a *feme sole* may do, but the question here is, whether this deed is not avoided by the law for the reasons assigned in the record?

Courts of justice are generally open to suitors for the recovery of just claims, but considerations of public policy are often

deemed paramount to private rights, and where they are opposed, the latter must yield.    There is no doctrine better settled than that agreements to obtain executive clemency, by means of pardons or writs of *nolle prosequi*, cannot be enforced. The reasons are obvious.    They are designed to protect the exercise of this power from abuse through the intervention of designing persons, and although in the particular instance no improper influences may have been resorted to, the public interest in such questions requires that the principle should be enforced in all cases.    It may, sometimes, as between the parties, be unjust to a claimant who has rendered valuable services for another in his distress, but rules of law, founded on public policy and the safety of society, will not be set aside to sustain such individual demand.    Without going into these doctrines at length, it may suffice to refer to the following authorities, where the subject is fully discussed:    *Collins vs. Blantern*, 2 *Wilson*, 341.    *Smith's Lead. Cases*, 154.    1 *Chitty's Crim. Law*, 4.    1 *Camp.*, 45, *Wallace vs. Hardacre.*    *Chitty on Contracts*, 571, 582, (*Ed.* 1851.)    *Story on Cont.*, sec. 202.    *Parsons on Cont.*, 365, 380.    *Keir vs. Leeman*, 51 *Eng. C. L. Rep.*, 308, and 58 *Eng. C. L. Rep.*, 371.    *Marshall vs. Baltimore & Ohio Rail Road Co.*, 16 *Howard*, 334.

It is true, as argued by the appellant's counsel, that the party here only undertook to apply to the governor for what the executive had authority to grant, and that there was nothing illegal in his making efforts to obtain the *nolle prosequi*.    But it does not follow that the case is relieved thereby from the objection taken on the part of the appellee.    The executive is still liable to be misled, and induced to act upon considerations suggested by a party having an interest to produce false impressions on his mind; and to shield that department of the government and protect the community against the improvident exercise of its prerogatives, the law has declared that a recovery cannot be had on such undertakings.    The same reason applies with equal force in support of claims for obtaining the passage of laws by the legislature.    We do not say that services of that kind may not be compensated when publicly rendered

by advocates disclosing their true relation to the subject, but certainly not when the character in which they solicit is unknown. And yet in all such instances, the legislature, most probably, would be asked to do only what there was ample power to grant.

There is much danger of abuse in the exercise of the pardoning power and in granting writs of *nolle prosequi,* arising from the manner in which such applications are generally presented. They were, before the adoption of the present constitution, preferred and acted on *ex-parte,* the governor necessarily relying on the imperfect, not to say, false, lights that such circumstances might afford. It is easy to perceive that this danger is greatly increased where the party urging the application is unknown to the executive, the paid agent of the accused, or is acting under the strongest inducements to varnish or misrepresent the facts by reason of his own interest in the success of the measure. No class of cases presents a more striking illustration than that to which the presentment mentioned in this record belongs. If it be understood as the law of the State that such compromises are binding and may be enforced, we may anticipate an increase in number of presentments for raising money under false pretences, and for conspiracies to defraud, found at the instance of persons defrauded, hoping thereby ultimately, as here expected, to secure the payment of their claims against the offenders. Although there may be cases in which compromises have been allowed, there are none, as far as we are informed, for arresting prosecutions by obtaining a *nolle prosequi* or otherwise, in cases affecting the public interest as closely as offences like that charged against Slaney. We take the rule as laid down by Lord Eldon, in *Norman vs. Cole,* 3 *Esp.,* 253, where one Tunstall, being under sentence of death, the plaintiff was prevailed upon to lodge thirty pounds in the hands of the defendant, to be applied to the purpose of procuring him a pardon. The plaintiff, being held to strict proof of the means employed to obtain the pardon, stated, that Tunstall was a man of good character before his conviction; that one Morland, being a person of good connections and having access to persons of

interest, the money was to be given to him for so using his interest, by representing, in favorable terms, the case and character of Tunstall. Lord Eldon would not let the cause proceed, saying, "Where a person interposes his interest and good offices to procure a pardon, it ought to be done gratuitously and not for money; the doing an act of that description should proceed from pure motives, not from pecuniary ones. The money is not recoverable." We suppose that the appellant who undertook to obtain the *nolle prosequi* could not have expected to succeed by means less exceptionable than those condemned by Lord Eldon.

The same principle was recognized in *Hatzfield vs. Gulden*, 7 *Watts*, 152, where the plaintiff sued to recover compensation for services rendered the defendant in procuring his pardon. The court there remarked, upon the means employed by the plaintiff, as showing that he was not actuated by pity or friendship, or a sense of justice, but for his own gain and emolument. It is true, the means resorted to by Wildey do not appear, and we are not to infer, in this particular case, that the power was unwisely exercised in consequence of the representations made by him to the governor; but it is quite plain, that motives of interest instigated his exertions in behalf of the accused, and if the manner in which his part of the engagement was performed could affect the case, which, however, we deem wholly unimportant, the *onus* was certainly on him to show the means by which the governor had been induced to act favorably upon the application.

We perceive nothing in the case to exempt it from the operation of the principles upon which the law reprobates contracts of this character, and concurring with the judge below in his view of the transaction, we must affirm the decree; but we do not consider it a case for costs.

*Decree affirmed.*