R. McBRATNEY v. J. F. CHANDLER, *et al.*

1. CONTRACT, *When Valid.* The contract of an attorney for services as such, whether the services are to be rendered before a court, a department of the government, or a legislative body, is valid.

2. CONTRACT, *Void.* The contract of a lobbyist, in the sense in which that term is now used, for his services as such, is against public policy, and void.

3. CONTRACT, *Vitiated.* Where the services contracted for and rendered, are partially those of an attorney and partially those of a lobbyist, and are blended together as part and parcel of a single employment, the en-

tire contract is vitiated, and after performance no recovery can be had for the work done as an attorney.

4. ————— *Presumption.* There is no presumption that a contract is illegal. He who denies his liability under a contract which he admits having entered into, must make the fact of its illegality apparent.

### *Error from Miami District Court.*

ACTION brought by *McBratney* against *J. F. Chandler* and *J. L. J. Chandler*, as administrators of the estate of Charles Sims, deceased, for moneys received by said Sims in his lifetime, belonging to the said plaintiff, as attorney's fees in the prosecution of the matter of the Miami Indians of Kansas, in the city of Washington, D. C. Trial at the May Term, 1876, of the district court, and judgment for the defendants. *McBratney* brings the case to this court. The opinion contains a sufficient statement of the facts.

*W. R. Wagstaff,* for plaintiff in error.

*J. A. Hoag,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This action was originally commenced in the probate court of Miami county, by the plaintiff, Robert McBratney, against the defendants above named, for moneys had and received by Charles Sims, in his lifetime, belonging to the said McBratney, as attorney's fees, in the prosecution of the matter of the Miami Indians of Kansas, in the city of Washington, D. C., as follows:

| | |
|---|---:|
| May 12, 1872, cash, | $170 |
| Dec. 15, 1873, cash, | 175 |
| Nov. 1, 1874, cash, | 950 |
| | $1,295 |

With interest on the respective sums from the dates given.

No pleadings were filed other than a simple statement of an account, in the language just quoted. The probate court disallowed the claim, and McBratney appealed. In the district court, after the plaintiff had rested, a demurrer to the evidence was sustained, and from this ruling plaintiff brings

error.	We think the court erred, and that the case was one which ought to have been left to the jury. That McBratney was employed, that he rendered services, and that Sims received money in payment of services from the Miamis, the testimony abundantly establishes. Whether Sims employed McBratney on his own account, or for and by authority of the Indians, and what the amount of McBratney's compensation was to be—whether one-half of all that Sims received, or simply a reasonable compensation for his services—are questions which the testimony leaves open to doubt. Of course, upon all such doubtful questions of fact, a party has a right to the opinion of the jury. Thus far we presume there would be no dispute between counsel, but the contention of the counsel for defendant in error is that the services which were rendered were such as are forbidden by public policy, and that therefore any contract to pay therefor was void. We quote from counsel's brief:

"Now the propositions proven by all the testimony are these: 1. Sims employed McBratney. 2. Sims employed plaintiff to influence legislation, and to use his personal influence with senators, members of congress and the heads of executive departments. 3. The pay of plaintiff was contingent upon success."

Doubtless it was upon this theory that the demurrer was sustained, and while there is abundant testimony to justify such a conclusion, yet we are constrained to think that it does not all tend in that direction. And because it does not, the court was not warranted in withdrawing the case from the jury. It appears that certain matters were pending before the department at Washington, and congress, in which the Miamis were interested, and in these matters Sims was employed by the Indians. To assist Sims, McBratney was employed. The exact terms of the contract and the exact nature of the services performed are in doubt. If all that was contemplated was the preparing of briefs, the making of oral arguments before the department or a committee of either house, the contract was valid and the services legitimate. If

the employment of plaintiff was as a lobbyist, and to render the services usually rendered by such parties, the contract was against public policy, and void. We had occasion to notice this question, and draw the line of distinction between the two classes of services, in the case of *K. P. R. W. Co. v. McCoy*, 8 Kas. 543, and it is unnecessary to more than refer to that case. See also the cases of *Marshall v. B. & O. R. R. Co.* 16 How. 314; *Tool Co. v. Norris*, 2 Wall. 45; *Trist v. Child*, 21 Wall. 441, in which the supreme court of the United States has fully and clearly discussed the question. This briefly may be stated to be the law: The contract of an attorney for services as such, whether the services are to be rendered before a court, a department of the government, or a legislative body, is valid, and upon performance of the services a recovery can be had. The contract of a lobbyist, in the sense in which that term is now used, for his services as such, is against public policy, and void. Where there is a single contract, and the services contracted for and rendered are partially those of an attorney and partially those of a lobbyist, and blended together as part and parcel of a single employment, the entire contract is vitiated. "That which is bad destroys that which is good, and they perish together." There is no presumption that a contract is illegal. He who denies his liability under a contract which he admits having made, must make the fact of its illegality apparent. The burden of showing it wrong is on him who seeks to deny his obligation thereon. The presumption is in favor of innocence, and the taint of wrong is matter of defense.

Because the testimony is not all one way, the question should have been submitted to a jury, and there was error in sustaining the demurrer.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.