WILLIAM DEERING & Co. v. J. C. CUNNINGHAM *et al.*

No. 12,321. (65 Pac. 263.)

SYLLABUS BY THE COURT.

1. CONTRACT—*Public Policy Contravened.* An agreement that, for a pecuniary consideration, a person will withdraw opposition to the granting of a pardon, and will, by solicitation and the exercise of personal influence, endeavor to induce the pardoning authority to grant a pardon to one who has been convicted of a crime, contravenes public policy and is void.

2. PRACTICE—*Impeaching Testimony.* A party is not concluded by the statements of any witness, but has the right to introduce other competent testimony to show the real facts, although such testimony may incidentally contradict or tend to impeach the testimony of a previous witness.

Error from Montgomery district court; A. H. SKIDMORE, judge. Opinion filed June 8, 1901. Division one. Affirmed.

*Albert L. Wilson,* for plaintiffs in error.
*A. B. Clark,* for defendants in error.

Deering v. Cunningham.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action to recover upon a promissory note for $100, bearing interest at the rate of ten per cent. per annum from date, given by J. C. and Mary E. Cunningham to Maud L. Sherrill. It is one of a series of notes given in pursuance of an agreement, of which the following is a copy:

"THIS AGREEMENT, Made and entered into by and between J. C. Cunningham, and E. Sherrill and Maud L. Sherrill, witnesseth:

"That the said E. Sherrill is to dismiss, at his cost, the suit now pending in the state of Illinois entitled E. Sherrill against George C. Cunningham, and brought for the recovery of damages, and the said Maud L. Sherrill is also to dismiss at her cost the suit now pending in Illinois entitled Maud L. Sherrill against George C. Cunningham, and the said J. C. Cunningham is to make, execute and deliver unto said Maud L. Sherrill his three promissory notes, each for the sum of $100 and interest from the date of this agreement at the rate of ten per cent. per annum, one note to mature on the 1st day of October, 1892, one on the 1st day of October, 1893, and the other one on the 1st day of October, 1894, said notes to be secured satisfactorily to said E. Sherrill, and to be placed in the hands of O. F. Carson, to be held by him until the conditions of this agreement on the part of said Maud L. Sherrill as aforesaid are performed. The parties hereto are to be friends hereafter, and to quit talking about each other, and all unite in an effort to secure a pardon for said George C. Cunningham, now confined in the penitentiary. All remonstrances and letters against the said pardon are to be withrawn, and the said E. Sherrill agrees to visit the judge who sentenced and the jury who convicted said George C. Cunningham and try to have them sign a petition for said pardon.

"In witness whereof, the parties have hereunto set
their hands, this 4th day of June, 1892.

J. C. CUNNINGHAM.
E. SHERRILL.
MAUD L. SHERRILL."

The note in controversy was delivered to Maud L.
Sherrill, who transferred it to William Deering & Co.
before maturity ; but it is contended that the contract,
in pursuance of which the note was given, contravenes
public policy, and that it and the accompanying notes
are therefore void ; that William Deering & Co. had
notice of the illegality in the consideration of the note
before purchasing the same, and therefore took it sub-
ject to that defense. The principal questions presented
for determination were whether there was illegality in
the consideration of the note, and whether William
Deering & Co., who acquired it before maturity, were
innocent purchasers. Both questions were decided in
favor of the defendants in error.

George C. Cunningham, who had been convicted of
a crime and was then in the penitentiary, was a son
of J. C. Cunningham, and it appears that the Sher-
1. Contravention of rills, especially Maud L. Sherrill, had
public policy. been active in the prosecution and in se-
curing the conviction. An effort had been made to
obtain a pardon for George C. Cunningham, and it
appears that the Sherrills had remonstrated and pro-
tested against the granting of the same. In consid-
eration of the notes given, the Sherrills agreed to
withdraw all remonstrance and letters protesting
against the pardon, to unite with the Cunninghams
in an endeavor to obtain the pardon, and to visit
the judge and the jurors before whom the conviction
was had and endeavor to get them to sign a petition
to the governor for a pardon.

Deering v. Cunningham.

The court below correctly advised the jury that the agreement was contrary to public policy, and that, as between the original parties or those who had notice of the illegality, the note was without consideration. There is necessarily nothing immoral or wrong in an application for a pardon. A person may have been wrongfully convicted. Subsequent developments may show that another than he committed the offense, or that there were mitigating circumstances not known when sentence was pronounced which require a mitigation of the penalty ; or it may be that the conduct of the prisoner or his condition warrant the interposition of the pardoning power and the lightening of the punishment imposed. A person may, therefore, be legally employed to prepare a petition, collect evidence showing the right to a pardon, and submit the same, together with proper arguments, either oral or in writing, to the governor or other authority granting pardons. So it has been frequently held that contracts for the performance of legitimate professional services, such as have been mentioned, and which are openly presented and appeal directly to the judgment and reason of the authorities to whom they are presented, are valid ; but there is a marked distinction between services like these and those contracted for in the present case. The consideration of the notes in this instance was personal influence and lobby services, not by any one skilled in such work, but because they had been instrumental in securing the conviction and of their opposition to the granting of the pardon which had been applied for. The purchase of personal influence to obtain a pardon or to control the operations of any department of the government is immoral and pernicious in tendency, and cannot receive the sanction of courts. Aside from

12—63 KAN.

the fact that the Sherrills agreed to use their personal influence, and had hired out their services to influence the action of the governor, there was a purchase of the withdrawal of their opposition, a sinister act for which no excuse can be given, and which is clearly inconsistent with public policy and sound morality.

Testimony tending to show that most of the considerations named in the agreement were free from taint or that no bad motives were entertained was not admissible and no error was committed by the court in excluding the same. The rule was stated in *McBratney v. Chandler*, 22 Kan. 692, 31 Am. Rep. 213 :

"The contract of an attorney, for services as such, whether the services are to be rendered before a court, a department of the government, or a legislative body, is valid, and upon performance of the services a recovery can be had. The contract of a lobbyist, in the sense in which that term is now used, for his services as such, is against public policy and void. Where there is a single contract, and the services contracted for and rendered are partially those of an attorney and partially those of a lobbyist, and blended together as part and parcel of a single employment, the entire contract is vitiated. That which is bad destroys that which is good and they perish together."

The claim that no improper influence was contemplated by the parties does not weigh much where, as in this case, the things expressly provided for in the agreement are so clearly under the ban of the law. In *Tool Company v. Norris*, 69 U. S. 54, 17 L. Ed. 868, it was held that the invalidity of agreements like this one did not depend upon the question whether improper influences were intended or used, but rather upon the corrupting tendency of such agreements, and Mr. Justice Field remarked :

"It is sufficient to observe, generally, that all agree-

ments for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution.   The law looks to the general tendency of such agreements; and it closes the door to temptation by refusing them recognition in any of the courts of the country."

In *Wildey v. Collier and wife*, 7 Md. 273, 61 Am. Dec. 346, an agreement to procure favorable action of the governor, for a pecuniary consideration, was held to be void as against public policy, and the court said :

"The reasons are obvious.   They are designed to protect the exercise of this power from abuse through the intervention of designing persons, and although in the particular instance no improper influences may have been resorted to, the public interest in such questions requires that the principle should be enforced in all cases."

In *Clippinger v. Kepbaugh*, 5 Watts & S. 315, 40 Am. Dec. 519, it was ruled :

"It matters not that nothing improper was done or was expected to be done by the plaintiff.   It is enough that such is the tendency of the contract; that it is contrary to sound morality and public policy, leading necessarily, in the hands of designing and corrupt men, to improper tampering with members and the use of an extraneous secret influence over an important branch of the government.   It may not corrupt all, but if it corrupts or tends to corrupt some, or if it deceives or tends to deceive or mislead some, that is sufficient to stamp its character with the seal of reprobation before a judicial tribunal."

See, also, *Oscanyan v. Arms Co.*, 103 U. S. 261, 26 L. Ed. 539 ; *Mills v. Mills*, 40 N. Y. 542, 100 Am. Dec. 535 ; *Rose v. Truax*, 21 Barb. 361 ; *Milbank v.*

*Jones*, 127 N. Y. 370, 28 N. E. 31, 24 Am. St. Rep. 454; *Powers v. Skinner*, 34 Vt. 274, 80 Am. Dec. 677; *Trist v. Child*, 88 U. S. 441, 22 L. Ed. 623 ; *Buck v. First National Bank*, 27 Mich. 293, 15 Am. Rep. 189; *Thompson &c. v. Wharton*, 70 Ky. 563, 3 Am. Rep. 306; 9 A. & E. Encycl. of L. 900.

In agreements providing for the use of personal influence to control official action, parties have sometimes stipulated that no improper means were intended and that only reasonable and legitimate methods were to be used, but even these stipulations were not sufficient to save the agreements from the ban of the law or the condemnation of the courts. (*Marshall v. Baltimore & Ohio Railroad Company*, 57 U. S. 314, 14 L. Ed. 953 ; *Elkhart County Lodge et al. v. Crary*, 98 Ind. 238, 49 Am. Rep. 746; *Sweeney v. McLeod*, 15 Ore. 330, 15 Pac. 275 ; *Chippewa Valley & S. R. Co. v. Chicago, St. P. M. & O. R. Co.*, 75 Wis. 224, 44 N. W. 17, 6 L. R. A. 601.)

Within the reasoning of the authorities cited, the agreement in question clearly involves the fatal elements, and a judicial interpretation of its terms warranted the court in telling the jury, as a matter of law, that it was illegal and void. The fact that it is void on its face renders unimportant some of the questions raised on the admission of testimony and on the instructions of the court.

The only question remaining is whether the transferees of the note had knowledge of its infirmity or such notice as fairly to put them upon inquiry. On this question there is considerable contrariety in the testimony, but of its sufficiency to put them upon notice there can be no doubt. It tends to

2. Trial practice— impeaching testimony.

show that the agent of the plaintiffs in the purchase of the note was expressly

warned several days before the purchase was made that it was not good and that the makers did not intend to pay it. It is contended that error was committed in the admission of testimony with reference to the good faith of the transfer. The agent of the plaintiffs who purchased the note was called as a witness by the defendants, and, among other things, testified that he had no notice of the defense of illegality or of the infirmity in the note. By other witnesses were shown the time and manner in which the plaintiffs acquired knowledge or notice of the defense, and the testimony was a contradiction of the statement made by the agent of the plaintiff. It is contended that, by producing the agent of the plaintiffs as their witness, they vouched for his truthfulness and were bound by his testimony, and that it was error to allow him to be impeached.

As a general rule, it is not permitted to produce a witness and then attack his veracity, if he fails to testify as was desired. Where a party has been entrapped or deceived by a hostile witness, he may, in the discretion of the court, be permitted to show that he was surprised or deceived, and counteract the injurious effect of the testimony by showing that the witness had previously made contrary declarations and what such declarations were. (*Johnson v. Leggett*, 28 Kan. 591; Greenl. Ev. § 442.) There was no attempt, however, in this case to impeach the witness, and the fact that he was called and examined by the defendants did not preclude the defendants from showing the actual facts in the case, although they may have incidentally contradicted the statements of the witness. It was said in *Wallach v. Wylie, as Sheriff*, 28 Kan. 138:

"A party never was concluded by the statements of

any one of his witnesses. He always had the right to introduce other competent testimony to prove his case, although such testimony might contradict the statements of a previous witness and might incidentally tend to impeach the testimony of such previous witness." (*The State v. Keefe*, 54 Kan. 197, 38 Pac. 302, 29 A. & E. Encycl. of L. 812.)

We find no reversible error in the case, and therefore the judgment of the district court will be affirmed.

CUNNINGHAM, GREENE, ELLIS, JJ., concurring.