MOORE, Respondent, v. HYDE, Appellant.

(163 N. W. 707.)

(File No. 4038. Opinion filed July 5, 1917.)

1. **Actions—Contracts—Securing Pardon, Legal Services In—Compensation, Legality, Limitation of Contract.**

   Services that can lawfully be contracted for in relation to an attempt to secure a pardon are only such service as are performed by lawyers. Compensation for such services performed even by a lawyer, beyond those which are strictly professional, cannot be recovered.

2. **Contracts—Lawyer's Services, Procuring Pardon—Legality—Public Policy.**

   While freedom of contract is a constitutional right not to be interfered with except for cause, attorneys cannot be permitted to do or fail to do that which, or the omission of which is clearly injurious to the public; nor will anything inconsistent with the impartial course of justice be upheld, even if the party's intent is not fraudulent, and although no evil resulted under this rule; the test being the evil tendency of the contract, in its actual injury to the public; and even stipulations that only reasonable and legitimate methods were to be used are not sufficient to save attorneys' agreements from the ban of the law or condemnation of the courts; it is enough that such is the tendency of the contract, that it is contrary to sound morality and public policy, leading, necessarily, in the hands of designing and corrupt men, to improper tampering with members and use of extraneous secret influences over a branch of the government. Under these principles, held, that it is contrary to public policy for a lawyer to perform or to contract to perform services under an application for pardon, or in lobbying, beyond those which are strictly in the line of professional employment.

3. **Contracts—Layman's Services, Securing Pardon, Securing Employment of Attorney to Procure Pardon, Securing Reduction of Attorney's Fees—Compensation—Legality of Contract—Complaint, Sufficiency.**

   A complaint alleging, among other things, that plaintiff, a layman, under a contract with defendant, under which he was to receive certain compensations, in consideration of performance of services (a) In going to Washington, D. C., and working for a pardon for defendant who had been convicted in the federal court of using the mails to defraud, and (b) in securing services of attorneys who were to appear and render services looking toward obtaining such pardon, and in effecting a reduction in the fees of said attorneys for the performance of their said services, fails to state a cause of action; such con-

tract being illegal and void, as against public policy; that the services to be rendered by plaintiff in securing pardon could not be those of a lawyer; and, that part of the contract being void, and the contract being non-separable, the whole contract was void. **Held,** further, that if the contract had contemplated solely the matters' referred to in item (b), it would still have violated public policy; since the attorneys could not, without violating professional ethics and public policy, contract to pay plaintiff for service in securing defendant as their client; neither could plaintiff recover for services in bringing attorneys to defendant, such service being equally contrary to good morals and public policy as the other; that the alleged contract is one to pay for an intermeddler in litigation, savoring of the business of brokerage in the relation of attorney and client; it detracts from the essential dignity of the profession; it is the capitalization of influence of layman over lawyer; and the sanctioning of such a contract would tend to commercialize law practice and make legitimate the business of furnishing lawyers to clients; and such a contract by a layman does not afford a legal basis for recovery of money.

Appeal from Circuit Court, Hughes County.  Hon. JOHN F. HUGHES, Judge.

Action by H. C. Moore, against Charles L. Hyde, for recovery of money under a contract with defendant to perform services in procuring for him a pardon for securing employment of attorneys in procuring such pardon, and in securing a reduction in amount of the attorney's proposed fees.  From an order overruling a demurrer to the complaint, defendant appeals.  Reversed.

*Howard G. Fuller,* for Appellant.

*Davis & Michel,* for Respondent.

(2) To point two of the opinion, Appellant cited: Deering & Company v. Cunningham (Kan.) 54 L. R. A. 410; Chippewa Valley and Superior R. Co. v. C., St. P. M. & O. R. R. Co., (Wis.) 6 L. R. A. 601, 606; 9 Cyc. 493; M. D. & P. Ry. Co. v. Way (S. D.) 148 N. W. 858; Pol. Code, Secs. 688, 685, 686, 697; Clippinger v. Hepbaugh, 5 Watt & S. 315; Huston v. Browne, 3 Colo. 304; Holland v. Sheehan (Minn.) 122 N. W. 1; Alpers v. Hunt (Cal.) 9 L. R. A. 43; 6 R. C. L. Sec. 146; Houlton v. Dunn, 30 L. R. A. 737, 740; Hatzfield v. Gulden, 7 Watts 152, 32 Am. Dec. 75; Note B, 117 A. S. R. 519; Widley v. Collier, 61 Am. Dec. 346.

(3) To point three of the opinion, Appellant cited: Lodge, Eng. Colonies in Amer., 53.

GATES, P. J. Action at law for the recovery of money. As a second cause of action plaintiff alleged:

"[1] That the defendant herein, Charles L. Hyde, was, prior to the 1st day of October, 1912, convicted in the United States court of using the mails to defraud; that after such conviction, the said defendant, Charles L. Hyde, was duly sentenced by the United States court to a term in the penitentiary, and that said Charles L. Hyde thereafter appealed said action to the Circuit Court of Appeals of the United States, which said Circuit Court affirmed the said conviction of said Charles L. Hyde; that thereafter the said Charles L. Hyde made an attempt to obtain a pardon from said sentence of conviction, and that the said Charles L. Hyde requested this plaintiff to exert his services in obtaining a pardon for the said Charles L. Hyde, and to also secure for the said Charles L. Hyde competent counsel to present said matter to the President of the United States, William H. Taft; that this plaintiff, at the instance and request of defendant, went to Washington, D. C., to work for said pardon, and that this plaintiff secured the services of one Wade H. Ellis of Washington, D. C., an attorney, and also the services of C. B. Ellis, a brother of said Wade Ellis, and this plaintiff interested said attorneys in behalf of said Charles L. Hyde; that the said Wade Ellis and C. B. Ellis stated to this plaintiff that they would appear and render services looking toward the obtaining of a pardon for Charles L. Hyde for the sum of five thousand ($5,000) dollars retainer, and the additional sum of twenty thousand ($20,000) dollars in case said pardon was granted; that this plaintiff was a close personal friend of the said Wade H. Ellis and C. B. Ellis, and both the said Wade H. Ellis and C. B. Ellis had, prior thereto, been attorneys for this plaintiff, and that plaintiff had great influence with the said Wade H. Ellis and C. B. Ellis, and that this defendant, Charles L. Hyde, knowing all of said facts, requested this plaintiff to use his services and his influence with the said Wade H. Ellis and the said C. B. Ellis to obtain a reduction in the fees to be paid for the services so to be rendered by the said Wade H. Ellis and C. B. Ellis, and that this plaintiff, at the instance and request of the defendant herein, did use his influence with the said

Wade H. Ellis and C. B. Ellis, and as a result thereof induced the said Wade H. Ellis and C. B. Ellis to render services in behalf of obtaining said pardon for the sum of three thousand ($3,000) dollars retainer, and the additional sum of twelve thousand ($12,000) dollars, in case a pardon was granted, instead of the sum of five thousand ($5,000) dollars retainer, and the additional sum of twenty thousand ($20,000) dollars, in case a pardon was obtained, first demanded by the said Wade H. Ellis and C. B. Ellis; that thereafter the said Wade H. Ellis and C. B. Ellis rendered services in behalf of said Charles L. Hyde, and as a result of said services obtained for the said Charles L. Hyde a pardon from said conviction, which pardon was granted by the President of the United States, William H. Taft. (2) That all of the services rendered by this plaintiff for and in behalf of this defendant in securing attorneys for said defendant, and in securing a reduction of the fees of said attorneys for securing said pardon, and that all of the work and services rendered by this plaintiff for defendant as hereinbefore in this cause of action alleged were done and performed by plaintiff at the special instance and request of the defendant. (3) That said defendant promised and agreed to pay plaintiff the said sum of five thousand ($5,000) dollars for such services so rendered as hereinbefore alleged. (4) That all of said services hereinbefore in this cause of action alleged were rendered by plaintiff for and in behalf of said defendant between the 1st day of October, 1912, and the 3d day of March, 1913. (5) That thereafter and prior to the commencement of this action the plaintiff herein duly demanded of defendant the payment of said services so rendered by plaintiff for defendant, but that no part thereof has ever been paid."

The defendant demurred to the second cause of action set forth in the complaint for that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. Therefrom the defendant appealed.

The alleged contract set forth in this cause of action may be considered from two angles: (a) That portion looking toward the rendition of services by plaintiff in securing the pardon; (b) that portion relating to services rendered by plaintiff in securing the employment of attorneys and in securing a reduction in the amount of their proposed fees.

[1] Plaintiff is confessedly not an attorney or counselor at law. Services that can lawfully be contracted for in relation to an attempt to secure a pardon are only such services as are performed by lawyers. Compensation for services performed even by a lawyer beyond those which are strictly professional cannot be recovered. Wm. Deering & Co. v. Cunningham, 63 Kan. 174, 65 Pac. 263, 54 L. R. A. 410; Hatzfield v. Gulden, 7 Watts (Pa.) 152, 32 Am. Dec. 750; Spalding v. Ewing, 149 Pa. 375, 24 Atl. 219, 15 L. R. A. 727, 34 Am. St. Rep. 608; Costigan, Legal Ethics, 537. In 1 Mod. Am. Law, p. 484, we find the doctrine of public policy well stated as follows.

"While freedom of contract is a constitutional right which ought not to be interfered with except for good cause, individuals cannot be permited to do or fail to do anything the performance or omission of which is in any degree clearly injurious to the public."

Again on page 486 of the same work it is stated:

"Anything inconsistent with the impartial course of justice will not be upheld even if the intent of the parties is not fraudulent and although no evil resulted."

In M., D. & P. Ry. Co. v. Way, 34 S. D. 435, 148 N. W. 858, L. R. A. 1915B, 925, this court said, quoting from Cyc.:

"The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance."

In Wm. Deering & Co. v. Cunningham, supra, a pardon case, the Supreme Court of Kansas said:

"In agreements providing for the use of personal influence to control official action, parties have sometimes stipulated that no improper means were intended and that only reasonable and legitimate methods were to be used, but even these stipulations were not sufficient to save the agreements from the ban of the law or the condemnation of the courts."

In Clippinger v. Hepbaugh, 5 Watts & S. (Pa.) 315, 40 Am. Dec. 519, the court said:

"It matters not that nothing improper was done or was expected to be done by the plaintiff. It is enough that such is the tendency of the contract, that it is contrary to sound morality and public policy, leading necessarily, in the hands of designing and corrupt men, to improper tampering with members, and the use

of an extraneous, secret influence over an important branch of the government."

These are the principles upon which it is held contrary to public policy for a lawyer to perform or to contract to perform services under an application for pardon or in lobbying, beyond those which are strictly in the line of professional employment.

[2] It being clear that the services to be rendered by plaintiff in securing a pardon could not be those of a lawyer, that part of the contract was void as against public policy, and the contract being nonseparable, the whole contract was void. Wm. Deering & Co. v. Cunningham, supra; Elliott, Contracts, § 1053; 6 R. C. L. 816; 9 Cyc. 566. But if the contract had contemplated solely the matters referred to in item (b) supra, it would still have violated public policy. The attorneys employed could not, without violating professional ethics and public policy, have contracted to pay plaintiff for his services in securing defendant as their client. Langdon v. Conlin, 67 Neb. 243, 93 N. W. 389, 60 L. R. A. 429, 108 Am. St. Rep. 643, 2 Ann. Cas. 834; Alpers v. Hunt, 86 Cal. 78, 24 Pac. 846, 9 L. R. A. 483, 21 Am. St. Rep. 17. No more can plaintiff recover from defendant for services in bringing an attorney to him. The one case is as equally contrary to good morals and public policy as the other. The alleged contract is one to pay for the services of an intermeddler in litigation. It savors of the business of brokerage in the relation of attorney and client. It detracts from the essential dignity of the profession. It is the capitalization of the influence of a layman over a lawyer. The sanctioning of such a contract would tend to commercialize the practice of law and to make legitimate the business of furnishing lawyers to clients. It is another form of "ambulance chasing." It tends to infringe the salutary provisions of canon 31 of the Canons of Professional Ethics promulgated by the American Bar Association, viz.:

"No lawyer is obliged to act either as adviser or advocate for every person who may wish to become his client. He has the right to decline employment. Every lawyer upon his own responsibility must decide what business he will accept as counsel; what causes he will bring into court for plaintiffs; what cases he will contest in court for defendants."

We unqualifiedly accept and indorse the concise statement of the legal proposition as set forth in appellant's brief, viz.:

"A contract by a laymen to influence an attorney at law to accept legal employment for another, and to reduce his proposed fees therefor, does not afford a legal basis for recovery of money."

We do not, however, wish to be understood as holding that a contract, initiated by the proposed client, with a third person to pay for the latter's time and expenses in securing a lawyer for the former, might not be enforceable if the element of personal influence over the lawyer or other improper means were not used nor contemplated, but such is not this case. Elliott, Contracts, § 1050.

The demurrer to the second cause of action should have been sustained, and the order overruling the same is reversed.